STATE of Delaware

v.

John W. GREEN and A. Edwards Danforth.

Superior Court of Delaware,
New Castle County.

Argued April 11, 1977.
Decided July 13, 1977.

At the time of the alleged offenses John W. Green was State Bank Commissioner and A. Edwards Danforth was chairman of the board and an officer of the Farmers Bank of the State of Delaware. Counts I and II charge that Green accepted the benefit of loans of $1,778 and $2,500 respectively between Farmers Bank and his wife. Count III charges conspiracy to commit the offense charged in Count II. Count IV charges that Green accepted a loan of $30,-819.64 from a New York bank "secured by the Farmers Bank of the State of Delaware, with a mortgage" given by Green and his wife to the Farmers Bank. Count V charges that Green accepted the benefit of a $1,500 loan between Farmers Bank and Green and his wife. Count VI charges that Danforth swore falsely in an officer's questionnaire in an annual joint state-federal examination that Farmers Bank had not extended any credit that was a direct or indirect liability of any bank examiner of Farmers Bank. Count VII charges that Green failed "to reveal the falsity of and take remedial action on" the officer's questionnaire described in Count VI.

Counts I, II, IV, V, and VII charge Green with official misconduct in violation of 11 *Del.C.* § 1211, which provides in pertinent part as follows:

> "A public servant is guilty of official misconduct when, intending to obtain a personal benefit . . . : . . . (2) He knowingly refrains from performing a duty which . . . is clearly inherent in the nature of his office . . . ."

In order to avoid being held unconstitutionally vague, a statute must meet the following test:

> "That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law; and a statute which forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily

Norman A. Barron, Deputy Atty. Gen., Wilmington, for the State.

Victor F. Battaglia and Robert K. Beste, Jr., of Biggs & Battaglia, Wilmington, for defendant John W. Green.

Carl Schnee and Michael N. Castle, of Schnee & Castle, Wilmington, for defendant A. Edwards Danforth.

BALICK, Judge.

The defendants have filed motions to dismiss the charges in a seven count indictment on the grounds of unconstitutional vagueness of the section of the criminal code defining the offense of official misconduct and failure to charge offenses.

guess at its meaning and differ as to its application violates the first essential of due process of law. * * *."

*Connally v. General Construction Co.,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926); *State v. Robinson,* Del.Supr., 251 A.2d 552 (1969); cf. 11 *Del.C.* § 201(2)

■ The test of constitutionality is not stricter than common understanding requires or ordinary language permits. § 1211(2) is the modern, codified version of the common law offense of nonfeasance in office. See commentary on § 1211. It is probably impossible and certainly impracticable to express all the duties of public offices in statutes. It was recognized at common law that a prosecution for nonfeasance could be based on a duty inherent in the nature of the office. 67 C.J.S. Officers § 110; 4 McQuillin Mun.Corp. (3rd Ed.) § 12.228a. For example, in a prosecution of a justice of the peace for nonfeasance in office, the defendant was charged with failing to notify the State of a hearing on a charge within his jurisdiction and failing to hear the State's witnesses, and the court instructed the jury that these were duties of the office where the governing statute simply provided that the justice of the peace shall "proceed to hear fully and to determine the case." *State v. Matushefske,* Del.Super., 215 A.2d 443 (1965).

■ A statute that might otherwise be subject to attack may be saved by a requirement that the actor have a particular state of mind. The common law offense of nonfeasance in office prohibited the "wilful" failure to act. See commentary on § 1211. Wilfulness is not defined as a state of mind under the Delaware Criminal Code, but § 1211(2) includes as an element of the offense of official misconduct that a public servant must "knowingly" refrain from performing his duty. This prescribed state of mind applies to all elements of the offense. § 252. Thus the State must prove that the defendant knew that he was refraining from performing a duty which is clearly inherent in the nature of his office. See the practice commentary on the section of the New York Penal Law that is the

model for § 1211(2). N.Y. Penal Law § 195.00 (McKinney 1975). Moreover, whereas no corrupt motive was required at common law, an element of § 1211 is that the defendant must intend to obtain a personal benefit or to cause harm to another person. See commentary on § 1211. Where the State must prove that a defendant acted with this knowledge and intent, the definition of the offense is not unconstitutionally vague. Cf. *Screws v. United States,* 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945).

Although § 1211(2) is not unconstitutionally vague, the issue remains whether the counts of the indictment charging official misconduct charge failure to perform "a duty which . . . is clearly inherent in the nature of [the] office [of State Bank Commissioner,]" as that phrase is used in § 1211(2). Counts I, II, and V charge that Green accepted the benefit of loans from a state bank and Count IV is apparently intended to charge that he accepted the benefit of a state bank acting as surety on a loan from an out of state bank. These charges are based on alleged conflicts of interest. The State contends that a duty clearly inherent in the nature of an office is that the public servant must avoid conflicts of interest and that if he fails to do so and the other elements of the offense are proven, he is guilty of official misconduct.

The legislature has enacted laws regulating the conduct of officers and employees of the State. 29 *Del.C.* Ch. 58A. In so doing, the General Assembly made the following finding:

> "To ensure propriety and to preserve public confidence, officers and employees of the State must have the benefit of specific standards to guide their conduct and of some disciplinary mechanism to guarantee uniform maintenance of those standards. Some standards of this type are so vital to government that violation thereof should subject the violator to criminal penalties." § 5851(2).

The provision in the code of ethics on acceptance of loans says as follows:

428

"If any employee [shall] have an unsecured loan exceeding $5000 from any business which is subject, in whole or in part, to the regulatory jurisdiction of . . . any State agency [,] he shall file with the State Personnel Commission a written statement fully disclosing the same. . . ." § 5855(f)(3).

This chapter provides that an employee having other types of conflicts of interest is subject to criminal penalties, but that an employee who fails to file the required written statement disclosing unsecured loans exceeding $5000 is subject only to removal, suspension, demotion, or other disciplinary action by the State Personnel Commission. § 5858(c)(4).

Although there is a federal statute barring federal bank examiners from accepting loans from banks that they examine, there is no similar specific standard barring the State Bank Commissioner from accepting loans from state banks. 18 U.S.C.A. § 213. Other than the provision in the code of ethics quoted above, the only statute bearing on this subject limits the conditions under which a bank or trust company may make loans to its directors, officers, or employees. 5 *Del.C.* § 909(d).

■ The phrase "a duty which . . . is clearly inherent in the nature of his office" means those unspecified duties that are so essential to the accomplishment of the purposes for which the office was created that they are clearly inherent in the nature of the office. The meaning of the phrase does not include the duty of avoiding violation of unspecified conflict-of-interest or other ethical standards. Such an interpretation would defeat the legislative policy that officers and employees of the State must have the benefit of specific standards to guide their conduct and should be subject to criminal penalties only for violation of those standards that are found to be especially vital to government. Specification of such ethical standards and appropriate sanctions for their violation is a legislative function, not one to be performed by a court in a prosecution for official misconduct.

■ Counts I, II, IV, and V fail to charge offenses for another reason as well. The conduct defined as a criminal offense in § 1211(2) is the omission to perform an act. See § 242. This was called "nonfeasance" at common law. See commentary on § 1211. Accepting the benefit of loans from a state bank, as charged in Counts I, II, and V, or accepting the benefit of a state bank acting as surety on a loan from an out of state bank, as charged in Count IV, are acts, not omissions to perform acts. Since these counts do not charge omissions to perform acts, they fail to charge offenses under § 1211(2).

■ Since Count II fails to charge an offense, Count III, which charges that the defendants conspired to commit the offense charged in Count II, also fails to charge an offense.

Count VI charges Danforth with perjury in the second degree in violation of 11 *Del.C.* § 1222. One of the elements of perjury in the second degree is that the defendant must swear falsely. "Swears falsely" is defined in the criminal code thus: "A person 'swears falsely' when he intentionally makes a false statement . . . under oath in a written instrument. . . . ." § 1224. "Oath" is defined thus: "'Oath' includes an affirmation and every other mode authorized by law of attesting the truth of that which is stated." § 1235(a).

There are statutes giving the method of administering oaths and providing who has authority to do so. See 10 *Del.C.* Ch. 53. It is also provided by statute that, "[i]n an indictment for perjury, it is sufficient to set forth the substance of the offense charged, stating before whom . . . the oath or affirmation, was administered or taken . . . ." 11 *Del.C.* § 3103.

■ Although the indictment charges that the defendant swore falsely, it does not state before whom the oath or affirmation was administered. In the bill of particulars the State acknowledges that there is no such person. The State thus in effect admits that the allegedly false an-

swer was not made under oath, but contends that the defendant is nevertheless guilty of a lesser included offense of making a false written statement. Unlike perjury in the second degree, the definitions of the offenses that generally prohibit making a false written statement, 11 *Del.C.* § 1233, and specifically prohibit making a false statement to deceive a bank examiner, 5 *Del.C.* § 123, do not include as an element that the statement must be made under oath.

 Where it appears from the bill of particulars and the State admits in argument on a pretrial motion to dismiss that it will not be able to prove one of the elements of the offense charged in the indictment, the indictment must be dismissed and any lesser or different charge not requiring proof of the element in question must be brought by a new indictment or information. It is unnecessary to consider Danforth's other contentions regarding this count.

 Unlike the other counts charging official misconduct, Count VII does charge an omission to perform an act, and I conclude for the following reasons that the act is an inherent duty of the State Bank Commissioner. The fundamental purpose of the office is to supervise and regulate banks and other financial institutions. 5 *Del.C.* § 121. It is expressly provided by statute that the State Bank Commissioner shall conduct a thorough examination of banks at least once in each year and file a detailed report of the examination. §§ 122, 124. It is a criminal violation for any director or officer of any bank subject to such an examination to make a false statement with intent to deceive the examiner. § 123. It follows that the duty of revealing and taking some remedial action where such a false statement is made is clearly inherent in the nature of the office of State Bank Commissioner.

 Count VII nevertheless fails to charge an offense. The indictment must state the essential facts constituting the offense charged. Superior Court Criminal Rule 7(c). The essential facts are those that will clearly inform the defendant of the precise offense charged so that he may prepare his defense and will be protected against later prosecution for the same offense. *Lasby v. State,* Del.Supr., 185 A.2d 271 (1962); Wright, Federal Practice and Procedure: Criminal § 125, p. 232. Each count is considered as if it were a separate indictment and must be sufficient without reference to other counts unless they are incorporated by reference. Wright § 123, p. 222. Count VI states wherein the officer's questionnaire was false and that the false statement was made in the course of an examination by the State Bank Commissioner. Although these allegations are doubtlessly intended, they are not incorporated by reference or otherwise stated in Count VII. Without these essential facts, Count VII fails to charge an offense under § 1211(2).

For these reasons, all counts of the indictment must be dismissed for failure to charge offenses.

Counsel may present an order.