OPINION OF THE COURT
William A. Kelly, J.
The defendant has moved by omnibus motion, dated December 16, 1997, for various forms of pretrial relief. The motion is decided as follows:
A. Constitutionality of the Statute
The defendant alleges that the statute under which he is charged is void for vagueness because there is no standard articulated from which it can be determined what conduct is “clearly inherent in the nature of an office” and, therefore, his due process rights have been violated. The People controvert the defendant’s allegations by relying on People v Goldswer (48 AD2d 748). The People assert that the defendant has failed to overcome the presumption of constitutionality that attaches to *432 legislative enactments, such as the creation of Penal Law § 195.00 (2), and contend that, in any event, the language of the statute “clearly apprises a reasonable man of the nature of the acts prohibited and of what conduct is required of him.”
In Screws v United States (325 US 91) the United States Supreme Court construed the breadth of a statute that was alleged to have no standard articulated by which to judge whether conduct is condemned or prohibited. The Supreme Court reaffirmed that it favored that interpretation of legislation which supports its constitutionality, stating, “[o]nly if no construction can save the Act from this claim of unconstitutionally are we willing to reach that result.” (Supra, at 100.)
In Lighthouse Shores v Town of Islip (41 NY2d 7) the New York Court of Appeals stated that, in order to defeat the “exceedingly strong” presumption of constitutionality, “unconstitutionality must be demonstrated beyond a reasonable doubt”. (Supra, at 11.) The Court of Appeals explained that, as for the challenged law or ordinance: “[i]t is * * * presumed that the legislative body has investigated and found the existence of a situation showing or indicating the need for or desirability of the ordinance, and, if any state of facts known or to be assumed, justifies the disputed measure, this court’s power of inquiry ends. Thus, [the] plaintiffs in order to succeed have the burden of showing that ‘no reasonable basis at all’ existed for the challenged portions of the ordinance.” (Supra, at 11-12.)
In this case, the defendant has failed to overcome the strong presumption of constitutionality. His conclusory statement that the statute sets forth “no statement whatsoever * * * from which it can be determined what would be ‘clearly inherent in the nature of an office’ ” is insufficient to carry his burden of proof.
In any event, the defendant is charged with having committed the crime of official misconduct in violation of section 195.00 of the Penal Law. This section of “the present, revised Penal Law condensed more than 30 separate provisions in the former Penal Law dealing with offenses of malfeasance and nonfeasance by public servants, most of which were very narrow ones involving violations of specific duties by specified public officers”. (People v La Carruba, 46 NY2d 658, 662.) Subdivision (2) of section 195.00 currently provides, in pertinent part, as follows:
“A public servant is guilty of official misconduct when, with intent to obtain a benefit or deprive another person of a benefit * * *
*433 “He knowingly refrains from performing a duty which is imposed upon him by law or is clearly inherent in the nature of his office.”
The court points out that the essential characteristic of official misconduct is that public servants are “under an inescapable obligation to serve the public with the highest fidelity”; that “they are required to display such intelligence and skill as they are capable of, to be diligent and conscientious, to exercise their discretion not arbitrarily but reasonably, and above all to display good faith, honesty and integrity” to ensure the “soundness and efficiency of our government, which exists for the benefit of the people who are its sovereign.” (Driscoll v Burlington-Bristol Bridge Co., 8 NJ 433, 474-476, 86 A2d 201, 221-222, cert denied 344 US 838 [1952] [citation omitted].) To define all of the duties of public offices in statutes is “probably impossible and certainly impracticable” (see, State v Green, 376 A2d 424, 427 [Del]). The official misconduct statute speaks in broad, general terms. It recognizes that some duties may be “imposed by law” and that some are “inherent in the nature of the office” (see, 67 CJS, Officers, § 110).
Significantly, the defendant does not contest the constitutional vagueness of the having breached a duty “imposed by law” provision of the statute. His protest is limited to the contention that there is no standard articulated to define what conduct is violative of a “duty clearly inherent in the nature of his office.” He asserts that, by virtue of the use of said language, the statute fails to provide a clear and unmistakable warning as to the acts which will subject one to criminal punishment.
The Penal Law is designed to “give fair warning of the nature of the conduct proscribed” and to “define the act or omission and the accompanying mental state which constitute each offense.” (Penal Law § 1.05 [2], [3].) The penal statute need only inform those who are subject to it what conduct on their part will render-them hable to its penalties.
A duty which is “clearly inherent in the nature of the office” encompasses those unspecified duties that are so essential to the accomplishment of the purposes for which the office was created that they are clearly inherent in the nature of the office (see, State v Green, 376 A2d 424, 427, supra). The criminal statute does not proscribe each and every failure to perform an “essential” and “unspecified” duty. What it does proscribe is the failure to perform an “essential” and “unspecified” duty by a public servant at a time when the public servant possesses a *434 criminally culpable state of mind. (Screws v United States, 325 US 91, 103-104, supra.) The inclusion of the criminally culpable state of mind makes the statute less severe “by making it applicable only where the requisite bad purpose was present”. (Supra, at 103.)
Thus, the District Attorney is required to prove that the defendant knew that he was refraining from performing a duty which is clearly inherent in the nature of his office and that the defendant intended to obtain a personal benefit or to cause harm to another person. (See, Penal Law § 195.00 [2].) Consequently, if the defendant refrains from performing such a duty with the specific requisite intent and is aware that what he does is precisely that which the statute forbids, he cannot complain on the grounds of vagueness of the language employed as it comports with common understanding. (Screws v United States, supra, at 104; State v Green, 376 A2d 424, 427, supra [upholding the constitutionality of a statute modeled on New York State’s official misconduct statute].) Accordingly, the court finds that the official misconduct statute, whereby the defendant is accused of failing to perform a duty clearly inherent in the nature of his office sufficiently apprises a reasonable man of the nature of the acts prohibited and of what conduct is required of him to comply with due process protections.
B. Facial Insufficiency
The defendant has moved to dismiss the indictment on the ground that, on its face, the indictment sets forth no facts whatsoever spelling out the commission of any crime. The People, however, rest on the fact that the indictment tracks the language of section 195.00 (2), under which the defendant is charged.
The People are correct. “[A]n indictment that states no more than the bare elements of the crime charged and, in effect, parrots the Penal Law is legally sufficient”. (People v Price, 234 AD2d 978; see also, CPL 200.70.) The primary purpose of the indictment is to give the defendant “fair notice of the nature of the charges, and of the manner, time, and place of the conduct underlying the accusations, so as to enable the defendant to prepare or conduct an adequate defense”. (People v Nichols, 193 AD2d 764; People v Rider, 115 AD2d 123, 125.) This was accomplished by providing in each count the name and the section of the particular statute violated. (People v Rider, 115 AD2d 123, 125.) Accordingly, the defendant’s motion is denied.
Changes in the Criminal Procedure Law, including the liberal discovery rules, have diminished the importance of the *435 indictment as an informational document. Where an indictment fails to specify the details of the wrongful conduct, the defendant may discover the particulars of the crime charged by requesting a bill of particulars. (People v Price, 234 AD2d 978, supra; People v Rider, 115 AD2d 123, 125, supra.) In this case, the defendant has requested and received a bill of particulars, which must be supplemented in compliance with a separate order of this court. The bill of particulars and supplementation will provide the defendant with fair notice of the accusations against him and enable him to prepare an adequate defense. (People v Patterson, 39 NY2d 288, 295; People v Iannone, 45 NY2d 589, 597.)
C. and D. Grand Jury Minutes/Dismissal of Indictment
The defendant has moved to dismiss the indictment on the ground that the evidence presented to the Grand Jury was legally insufficient to warrant the return of an indictment. The People have controverted the defendant’s allegations and have consented to an in camera ex parte inspection by this court of the Grand Jury minutes. The People allege that an inspection will reveal: (a) that the evidence before the Grand Jury amply supports the offenses charged; and (b) that the Grand Jury was properly instructed on the law.
This court has reviewed the evidence presented in light of the fact that the object of the official misconduct statute is to punish a breach of duty committed with the requisite culpable state of mind, and recognizes that, if the person owed no duty, there is no breach. (People v Gleason, 75 Hun 572.) Upon consideration of the evidence, this court finds that the evidence reasonably supports the charges that the defendant failed to perform a “duty clearly inherent in the nature of his office” and finds that the presentation was legally sufficient to support the crimes charged in the indictment.
This holding adheres to the principles articulated by Chief Judge Cardozo in his opinion in Meinhard v Salmon (249 NY 458, 464) where he stated, “A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior.” These principles were subsequently interpreted by the Appellate Division, Second Department, to govern the behavior of public servants in Matter of Tuxedo Conservation & Taxpayers Assn. v Town Bd. (69 AD2d 320, 324).
In Tuxedo (supra) the Court found that a board member’s vote on a $2,000,000 site plan proposal was prompted by the *436 “ ‘jingling of the guinea’ ” (at 324) rather than his conscience as a member of the town board. The Court stated that the probability of the member’s firm getting an advertising contract if the project succeeded was real, with the percentage greatly in his and its favor. (Matter of Tuxedo Conservation & Taxpayers Assn. v Town Bd., supra, at 326.) This was in contravention of the rule that a public servant may not serve two masters, or a master and himself, in the same business. (See, 18 NY Jur 2d, Civil Servants and Other Public Officers and Employees, § 153.) As a result, the Court voided the vote as “public policy forbids an action by a municipality * * * founded on a vote of * * * atn] official who benefited directly and individually.” (Matter of Tuxedo Conservation & Taxpayers Assn. v Town Bd., supra, at 324.)
In the instant case, the defendant is charged with a violation of a duty clearly inherent in the nature of his office in that, while acting allegedly pursuant to subdivision (34-a) of section 1709 of the Education Law (which section authorizes a school board to procure group health insurance), he voted to approve the paid services of an insurance consultant and contracts with insurance providers and he has benefited financially from the transaction.[1]
In the past, conduct of this sort was prohibited even in the absence of evidence indicating that the “amount of insurance carried was excessive or that * * * the premium [was] paid to someone other than the board member.” (Matter of Gray [Dist. No. 13, Town of Fla.], 68 St Dept Rep 46, 47 [1947]; Matter of Removal from Off. of Certain Members of Bd. of Educ., 43 St Dept Rep 211 [acceptance of premiums by a trustee is a violation of former section 1617 of the Education Law]; 5 Opns St Comp, 1949, at 154 [a school district supervisor may not lawfully sell insurance to the school district by which he is employed].)
Presently, the obligation to act free from conflicts of interest and to disclose such conflicts is codified in article 18 of the General Municipal Law. (See, General Municipal Law § 801 et seq.) The Commentary regarding the legislative stimulus for article-18 of the General Municipal Law clearly relates that “[a]s government becomes increasingly complex, as our *437 democratic processes draw citizens from every walk of life, there is an increasing need for known standards of ethical conduct as a guide for public officers. These standards must rest primarily on personal integrity and on community vigilance: law cannot in itself create moral fiber, nor can law quicken the civic conscience. In support of these basic standards, it is the purpose of this chapter to define areas of conflicts of interest in municipal transactions, leaving to each community the expression of its own code of ethics.” (Historical Note, McKinney’s Cons Laws of NY, Book 23, General Municipal Law art 18, at 211.)
This court points out that the mere fact that the conduct proscribed by the statutory scheme is also prohibited by the rules of ethical conduct adopted by the School Board stands as no barrier to criminal prosecution. Ethical impropriety may coexist with criminal conduct and the existence of the former does not preempt the imposition of criminal sanctions for the violation of a penal statute.
In this case, the evidence presented to the Grand Jury supports the People’s contention that the defendant was aware of his obligations governing the procurement of group health insurance,[2] including his ethical obligation to perform said duty free from conflicts and to disclose such conflicts. The evidence showed that he took an oath of office and was provided with an ethics policy, which was enacted pursuant to General Municipal Law § 806 (1). The policy required that, “[i]f he participates in the discussion or gives official opinion on any legislation before the Board; he will publicly disclose on the official record the nature and extent of any direct or indirect financial or other private interest he has in such legislation.” It also prohibited him from “solicit[ing] or accepting] any commission, expense paid trips, or anything of value from individuals or companies who are vendors or potential vendors to the district” and prohibited him from “receiving], or enter [ing] into any agreement, express or implied, for compensation for services to be rendered in relation to any matter before the school district of which he is a Board member or employee.” There was testimony that, despite the defendant’s claim that he never read the ethics policy, he served on a subcommittee charged with the responsibility to review and revise the Board’s ethics policy.
The People produced testimony from different witnesses that the defendant refrained from disclosing his financial interest in *438 legislation on three separate occasions: (a) on July 5, 1994, when the School Board voted to approve Blue Cross/Blue Shield as the district’s insurance provider; (b) on February 28, 1995, when the School Board voted to approve Saul Kotler as the school district insurance consultant; and (c) on November 21, 1995, when the School Board voted to approve US Healthcare as the district’s insurance provider. On each occasion, the defendant was present, voted and ratified the action taken.
The People also presented evidence that, at the time the Board was voting on the contract for the health insurance policy for the district, the defendant had a preexisting fee sharing arrangement with his employer and Mr. Kotler. The arrangement was reaffirmed by the defendant, his employer and Mr. Kotler in a face-to-face meeting after the July 5th legislation had been ratified. It entitled the defendant to 25% of any commissions he generated.
The People presented evidence to the Grand Jury which evidence provided a reasonable and sufficient basis from which to infer that, on each occasion, the defendant “knowingly” refrained from performing a duty clearly inherent in the nature of his office as a School Board member.
The People also presented evidence to the Grand Jury that, on each occasion when the defendant refrained from disclosing his financial interest, he “intended” to obtain a personal financial benefit in the form of insurance commissions passed from Mr. Kolter through the defendant’s employer to the defendant. He was an insurance professional and could readily appreciate and understand that the generation of a multimillion dollar insurance premium would result in a substantial commission to him. His secret arrangement, his personal pickup of commission checks and receipt of approximately $107,000 in commissions provided a reasonable and sufficient basis upon which the Grand Jury could have inferred that the defendant intended to obtain a personal financial benefit.
This court finds that the case of People v La Carruba (46 NY2d 658, supra) is distinguishable. In La Carruba, a Judge was accused of improperly dismissing a simplified traffic information received by a personal friend in violation of Code of Judicial Conduct Canons 2 and 3. The District Attorney prosecuted the Judge for official misconduct because she allegedly refrained from performing a duty “clearly inherent in the nature of her office” (at 663). In essence, the prosecutor parlayed a violation of the Code of Judicial Conduct into a prosecution for criminal nonfeasance of duty under subdivision *439 (2) of CPL 195.00. The Court of Appeals refused to countenance the institution of criminal proceedings premised upon a violation of the provisions of an ethical code, stating “We perceive no intention on the part of the Legislature to cloak the District Attorney with responsibility for compelling conformity with the Code of Judicial Conduct.” (People v La Carruba, at 664-665.)
The dispositive fact was that the Legislature had neither incorporated nor otherwise adopted the provisions of the Code of Judicial Conduct. The Code of Judicial Conduct itself was based on ethical standards promulgated by the American Bar Association and the New York State Bar Association and subsequently incorporated by reference in the Rules of the Appellate Division, Second Department. The Code of Judicial Conduct has never been enacted as law.
‘While there can be no doubt of the authority of bar associations to promulgate enforceable ethical standards or of the Appellate Division to incorporate such standards in rules of court, neither the bar associations nor the Appellate Division is empowered to discharge the legislative responsibility to define the elements of a crime.” (People v La Carruba, supra, at 663.)
The delegation of legislative responsibility, which thereby allowed a prosecutor to enforce provisions of the Code of Judicial Conduct by means of the official misconduct statute was improper. It vested too much discretion in the hands of the prosecutor, who was free to “import a definition of judicial duty based on ethical standards” into the official misconduct statute, without legislative guidance. (People v La Carruba, supra, at 663.) This failed to provide “ ‘fair warning of the nature of the conduct proscribed * * * [and to] define the act or omission * * * which constitute[s] each offense’ ”. (Supra.)
In this case, a School Board trustee has a duty to procure insurance for the school district free from conflict. This duty is distinguishable from the duty recognized in La Carruba (supra). In La Carruba, the Code of Judicial Conduct was recognized as a “compilation of ethical objectives and exhortations for the violation of which recourse has traditionally been had to disciplinary rather than criminal proceedings.” (Supra, at 663.) Here, the duty to act is “so clear that the public servant is on notice as to the standards that he must meet”. (Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 195.00, at 387 [1975].) A violation of the ethical rules promulgated under article 18 of the General Municipal Law, including section 801 (1) (a), is itself punish *440 able as a misdemeanor under section 805. Thus, where, as here, the requisite culpable state of mind is present, the violation is also punishable as a misdemeanor under the official misconduct statute.
Under the facts and circumstances presented herein, the District Attorney and the Grand Jury, by charging and prosecuting the defendant herein did not act unaided by legislative enactment but in conformity and compliance with express enactments which proscribe conduct and subject violators to criminal sanctions. Accordingly, the defendant’s motion to dismiss the indictment is denied.

. This court will not seriously entertain the defendant’s argument made to the Grand Jury that he did not sell insurance to the District because the commissions generated therefrom had to pass through two other intervening entities before reaching his hands. This court finds such sophistry to be without merit.

. See, Education Law § 1709 (34-a).