OPINION OF THE COURT
Jacqueline Williams, J.
The defendant, Melisa Jackson, is charged with one count of official misconduct (Penal Law § 195.00 [2]).
The defendant has moved for an order granting dismissal of the aforesaid charge against her pursuant to Criminal Procedure Law § 100.15 (3) for facial insufficiency. The People oppose the defendant’s motion.
For the reasons set forth below, the defendant’s motion is denied.
Background
On October 12, 2010, the defendant was arrested and charged with violating Penal Law § 195.00 (2). On the same date, the defendant was arraigned on a misdemeanor complaint, charging *133 her with official misconduct, which allegedly occurred on or about December 9, 2009, at approximately 9:00-9:15 a.m., at 1 Metrotech Center, Kings County, New York. The complaint alleges the following:
“the informant [Lourdes Colon] was working at the ground floor of the above location, an Au Bon Pain Restaurant, and observed her co-worker, Eutish Rennix, who informant knew to be approximately six (6) months pregnant, complaining of severe abdominal pain and difficulty breathing. The informant further states that she and another co-worker did then escort Eutisha Rennix to a rear room inside of the above-mentioned location, where Eutisha Rennix continued to complain of severe abdominal pains and increased difficulty breathing . ..
“informant [Colon] did return to the front area of the above location, where she observed the defendant Jackson and Jason Green inside the location, and that defendant Jackson and Jason Green were both dressed in the uniform of a New York City Fire Department-Emergency Medical Technician. Further, the informant states that she informed defendant Jackson and Jason Green that Eutisha Rennix was pregnant and having an asthma attack, and that the informant requested that they call an ambulance for her. Informant further states that she returned to the rear room to continue to assist Eutisha Rennix, and that neither defendant Jackson nor Jason Green entered the rear room to provide aid or assistance to Eutisha Rennix . . .
“at the above time and place, informant [Greña Louisma] was working as a cashier in the above-mentioned Au Bon Pain Restaurant and that informant observed her co-worker, Eutisha Rennix, begin to complain of not feeling well and that Eutisha Rennix, began to cough uncontrollably, whereafter, the informant observed Eutisha Rennix go into a rear room at the location . ..
“following the above-described observations regarding Eutisha Rennix, informant [Louisma] observed defendant Jackson and Jason Green standing in line at the informant’s cashier station, waiting to pay for purchases, and that both defendant Jackson and Jason Green were wearing the uniform of a New York City Fire Department-Emergency Medical *134 Technician. Further, informant Louisma did observe informant Colon approach the defendant and Jason Green and did hear informant Colon request their help and did further hear informant Colon inform defendant Jackson and Jason Green that Eutisha Rennix was in the rear room suffering from an asthma attack and that Rennix was pregnant...
“following the request for their assistance made by informant Colon, detailed in the paragraph above, informant Louisma observed defendant Jackson and Jason Green continue to remain in the cashier’s line, and that defendant Jackson did use her cellular telephone while paying for her purchases, whereafter defendant Jackson and Jason Green did leave the location without ever going into the rear room where Eutisha Rennix was located . . .
“[Abdo Nahmod, Deputy Assistant Chief — New York City Fire Department — Emergency Medical Dispatch Center, located on the upper floors of 1 Metro-tech Center] . . . has reviewed the official records of the New York City Fire Department, including recordings of telephone calls received by the Medical Dispatch Center and building security video of 1 Metro Tech Center, recorded and maintained by the Fire Department, and that, as a Deputy Assistant Chief, he is a custodian of said records and is qualified to read and interpret the contents thereof.
“Based upon that review, informant Nahmod states the following: That, at the above mentioned date and time, defendant Melissa Jackson and Jason Green were both employed by the New York City Fire Department as certified Emergency Medical Technicians, and that both defendant Jackson and Green were on-duty and assigned to the Emergency Medical Dispatch Center located within 1 Metro Tech Center; that, from a review of security video taken on the above-mentioned date and time, both Jackson and Green were wearing the uniform of an Emergency Medical Technician of the Fire Department of the City of New York on that date; that, at approximately 09:13 AM, a telephone call was received and recorded by the Emergency Medical Dispatch Center from defendant Jackson, who identified herself by name and identification number, requesting that an ambulance respond to the *135 above location for a ‘female/pregnant/don’t know age/trouble breathing,’ whereafter, according to the above-mentioned video surveillance records, at approximately 09:14 AM, defendant Jackson and Green re-entered into the Emergency Medical Dispatch Center . . .
“informant Nahmod . . . has reviewed the employee work schedules of the Emergency Medical Dispatch Center for December 9th, 2009, and that said schedules reveal that defendant Jackson was, at all times during this occurrence, scheduled and assigned to monitor a dispatch terminal and/or to be present within the command center, and, further, that defendant Jackson was not authorized to be outside of the command center or on a break at any of the above-mentioned times. Informant Nahmod further states that Jason Green was, at the above-mentioned times, on an authorized break ...
“informant Nahmod . . . has reviewed and is familiar with the operations guide of the Emergency Medical Service Command of the New York City Fire Department, which applies to defendant Jackson and to Jason Green as Emergency Medical Technicians with the Fire Department of the City of New York, and that said guide requires that all on-duty Emergency Medical Technicians must, when flagged down for assistance, acknowledge and provide treatment, as well as notify the Emergency Medical Dispatch Command of the situation.”
On October 15, 2010, the People served and filed off-calendar a statement of readiness, along with supporting depositions by informants Lourdes Colon, Greña Louisma, and Abdo Nahmod.
On November 29, 2010, defense counsel filed the instant motion to dismiss for facial insufficiency.
Defendant’s Contentions
Defense counsel contends that the People have failed to comply with the requirements of CPL 100.15 (3) and People v Alejandro (70 NY2d 133 [1987]). He argues that the complaint lacks any factual assertion that supports the three elements of the Penal Law § 195.00 (2) charge. Defense concedes the following: (1) the defendant was a public servant on duty at the time of the alleged offense; (2) informant Lourdes Colon requested that the defendant call an ambulance; (3) the defendant did, in *136 fact, place a call to the Emergency Medical Dispatch Center, during which she identified herself by name and identification number, and requested that an ambulance respond to the location; (4) the defendant was not on an authorized break at the time; and (5) the Operations Guide of the Emergency Medical Service Command of the New York City Fire Department requires that all on-duty emergency medical technicians must, when flagged down for assistance, acknowledge and provide treatment, as well as notify the Emergency Medical Dispatch Command of the situation.
However, defense counsel contends that there is no statement in the complaint asserting what duty the defendant “knowingly” refrained from performing.
Defense counsel also contends that the complaint alleges no facts to support the element, “intent to obtain a benefit or deprive another person of a benefit.” Defense argues that the defendant’s alleged failure to act by providing treatment does not amount to her seeking to obtain a benefit.
People’s Contentions
The People argue that the complaint is facially sufficient with respect to the charge of official misconduct (Penal Law § 195.00 [2]). They argue that the complaint sufficiently establishes on its face that the defendant failed to perform her duties by failing to provide treatment, as prescribed in the Operations Guide, and that in failing to do so, she acted knowingly. They argue that the knowing element was established by the fact that the defendant herself telephoned the Emergency Medical Dispatch Command; had she been unaware of the duties imposed upon her (to contact the command center and provide treatment), she would have simply verified whether anyone else present in the restaurant had telephoned the 911 operator.
The People also argue that the complaint sufficiently alleges that the defendant failed to comply with her duty “with intent to obtain a benefit or deprive another person of a benefit.” They state that the defendant intentionally failed to provide treatment in order to hide the fact that she had abandoned her assigned duty station by going on an unauthorized break.
Discussion
At issue is whether the information was facially sufficient with respect to the charge of official misconduct (Penal Law § 195.00 [2]).
*137 To be facially sufficient, an accusatory instrument must (1) allege nonhearsay facts that would give the court reasonable cause to believe that a defendant committed the offense charged and (2) establish, if true, every element of any such offense charged and the defendant’s commission thereof. (See CPL 100.40 [1]; People v Dumas, 68 NY2d 729, 731 [1986]; People v Alejandro, 70 NY2d 133, 137 [1987].) The facts in an accusatory instrument must “establish a prima facie case,” supported by legally sufficient evidence to “establish that the defendant committed the crime.” (See Alejandro, 70 NY2d at 138.)
A court reviewing the facial sufficiency of an information must consider the evidence viewed in a light most favorable to the People. (People v Dreyden, 28 Misc 3d 5, 7 [App Term, 2d Dept 2010], lv denied 15 NY3d 773 [2010].) “So long as the factual allegations of an information give an accused notice sufficient to prepare a defense and are adequately detailed to prevent a defendant from being tried twice for the same offense, they should be given a fair and not overly restrictive or technical reading.” (See People v Casey, 95 NY2d 354, 360 [2000]; see also People v Baumann & Sons Buses, Inc., 6 NY3d 404, 408 [2006].)
Penal Law § 195.00 (2) provides:
“A public servant is guilty of official misconduct when, with intent to obtain a benefit or deprive another person of a benefit: . . .
“2. He knowingly refrains from performing a duty which is imposed upon him by law or is clearly inherent in the nature of his office.”
Intent to Obtain a Benefit
The defendant asserts that the misdemeanor complaint lacks any factual allegations that support the element of “benefit.”
Penal Law § 10.00 (17) provides: “ ‘Benefit’ means any gain or advantage to the beneficiary and includes any gain or advantage to a third person pursuant to the desire or consent of the beneficiary.”
The defendant is correct in that the accusatory instrument must provide factual nonhearsay allegations of a benefit. (People v Ioppolo, 45 AD2d 745 [2d Dept 1974] [court properly dismissed indictment charging official misconduct because of lack of evidence of a “benefit” to the defendant]; People v Thompson, 58 Misc 2d 511, 514-515 [Saratoga County Ct 1969] [indictment was insufficient because it did not contain a factual allegation of *138 what the defendant intended to obtain as a benefit for his restraint or arrest]; cf. People v D’Arcy, 79 Misc 2d 113, 120 [Allegany County Ct 1974] [although none of the 29 counts pleading official misconduct contained a factual allegation of what “benefit” the defendant sought to gain, the court did not find the counts to be sufficiently defective as to require their dismissal].) The benefit itself “must not be so remote, abstract, or theoretical as to create speculation as to its ultimate value to the receiver.” (People v Cavan, 84 Misc 2d 510, 512 [Sup Ct, Queens County 1975].)
The complaint must also contain factual allegations of the defendant’s intent to obtain a benefit or advantage or deprive another person of a benefit. (People v Feerick, 93 NY2d 433, 446 [1999].) For an indictment to charge the criminal act of official misconduct, it must contain a factual allegation of the defendant’s intent to benefit, which “must be a venal or culpable motive for failing to perform his duty.” (People v Thompson, 58 Misc 2d 511, 514 [1969].)
It is well settled that a defendant’s intent may be inferred from his actions. (See People v Bracey, 41 NY2d 296, 301 [1977] [intent can be inferred from the act itself or from the defendant’s conduct and the surrounding circumstances]; People v Smith, 79 NY2d 309, 315 [1992] [“Often there is no direct evidence of a defendant’s mental state and the jury must infer the mens rea circumstantially from the surrounding facts”]; People v Persaud, 25 AD3d 626, 627 [2d Dept 2006], lv denied 6 NY3d 837 [2006] [“intent may be inferred from the act itself as well as from the defendant’s conduct and the surrounding circumstances”]; People v Britton, 49 AD3d 893 [2d Dept 2008] [“the element of intent may be inferred from the commission of the act itself, as well as from the defendant’s conduct and the surrounding circumstances”].)
Here, the defendant’s presence at the scene of the incident, at a time when she was not authorized to leave the command center, could have subjected her to possible discipline by her employers or other professional consequences. Thus, the defendant’s departure from the scene, where she had no authority to be, supports the “benefit” element, as well as the defendant’s intent to receive an advantage or gain by avoiding such disciplinary actions. (See e.g. People v Feerick, 93 NY2d 433, 448-449 [1999] [defendants’ unauthorized acts in retrieving a police radio, the loss of which “could have subjected defendants to scorn, ridicule or possible discipline can be viewed as an advantage or gain”].)
*139 The instant complaint sufficiently alleges on its face what the defendant intended to obtain as a benefit for her failure to provide treatment. Contrary to the defendant’s argument, the court is not aware of case law requiring the accusatory instrument to specifically spell out which factual allegation constitutes the “benefit.” (People v D’Arcy, 79 Misc 2d 113, 122 [1974] [“a specification of ‘benefit’ as pleaded in each count of official misconduct is the proper subject matter for a bill of particulars”].)
Knowingly Refrains from Performing a Duty Imposed by Law or Clearly Inherent in the Nature of Office
The defense counsel also contends that there is no factual allegation in the complaint asserting what duty the defendant knowingly refrained from performing.
With respect to the remaining elements of Penal Law § 195.00 (2), the accusatory instrument must set forth nonhearsay factual allegations that the defendant knowingly refrained from performing a duty imposed upon her by law or clearly inherent in the nature of her office.
The instant complaint establishes that the defendant’s duty as an emergency medical technician, pursuant to the Operations Guide of the Emergency Medical Service Command of the New York City Fire Department, is to “acknowledge and provide treatment, as well as notify the Emergency Medical Dispatch Command of the situation” when flagged down for assistance.
The People do not establish that providing treatment is a duty imposed by law pursuant to Penal Law § 195.00 (2). However, the accusatory portion of the information does allege, in the alternative, that providing treatment is a duty clearly inherent in the nature of the office.* (CPL 100.15 [1], [2].)
There are few cases that define the meaning of the phrase, “clearly inherent in the nature of [the] office,” as required by Penal Law § 195.00 (2). However, People v Lynch (176 Misc 2d 430, 433 [Rockland County Ct 1998]) provides the following: “A duty which is ‘clearly inherent in the nature of the office’ en *140 compasses those unspecified duties that are so essential to the accomplishment of the purposes for which the office was created that they are clearly inherent in the nature of the office” (quoting State v Green, 376 A2d 424, 427 [Del Super Ct 1977]; People v Ridge, 25 Misc 3d 432 [Nassau Dist Ct 2009]).
The instant information alleges that the Operations Guide of the Emergency Medical Service Command of the New York City Fire Department applies to the defendant as an emergency medical technician. Said Operations Guide requires that “all on-duty Emergency Medical Technicians must, when flagged down for assistance, acknowledge and provide treatment, as well as notify the Emergency Medical Dispatch Command of the situation.” Thus, the information demonstrates that the act of providing treatment when flagged down for assistance is a fundamental duty “essential to the accomplishment of the purposes for which the office was created.” (People v Lynch at 433; compare People v Ridge at 439-440 [fundamental duties of a corrections officer include patrolling the Correctional Center buildings, supervising inmates, inspecting for contraband, inmate head counts, escorting inmates, searching inmates, and supervising visitors].)
The People are also required to prove that the defendant knew that she was refraining from performing a duty that is clearly inherent in the nature of her office. (People v Lynch at 434.) The information establishes that the defendant was a member of and employed by the Emergency Medical Service Command of the New York City Fire Department, and that the Operations Guide of the Emergency Medical Service Command imposed a duty upon the defendant as an on-duty emergency medical technician to provide treatment, as well as contact the command center. The People contend that the defendant was aware of the duties imposed upon her by the Operations Guide because she personally telephoned the Emergency Medical Dispatch Command Center, rather than simply verifying whether anyone else had telephoned the 911 operator. Viewing the evidence in the light most favorable to the People (see People v Contes, 60 NY2d 620, 621 [1983]), these factors, considered together, circumstantially demonstrate the element of the defendant’s mens rea for facial sufficiency purposes. (People v Olwes, 191 Misc 2d 275, 278 [Crim Ct, Kings County 2002].) As to whether the defendant had actual knowledge of her fundamental duties as an emergency medical technician, “[t]he fact-finder will have the opportunity at trial to determine whether or not the defendant had actual knowledge.” (Id.)
*141 Accordingly, the court finds that the accusatory instrument alleges nonhearsay facts that would give reasonable cause to believe that a defendant committed the offense of official misconduct and establishes, if true, every element of said offense charged and the defendant’s commission thereof. (CPL 100.40 [1].)
Conclusion
The defendant’s motion to dismiss the accusatory instrument on the ground of facial insufficiency is denied.

 The accusatory part of the instant instrument states,
“The defendant committed the offense of Official Misconduct, Penal Law 195.00 (2), in that the defendant did: Being a public servant, and with intent to obtain a benefit or deprive another person of a benefit, knowingly refrain from performing a duty which was imposed upon him by law or was clearly inherent in the nature of his office.”