OPINION OF THE COURT
SONDRA K. PARDES, J.
*926 The defendant, Susan Mendelson, is charged with a violation of section 168-16 of the Code of the Town of Oyster Bay alleging that on August 1, 2006, at 7:15 p.m., in John J. Burns Park, a park owned and maintained by the Town of Oyster Bay, she was distributing leaflets on behalf of “Jews for Jesus” without a permit.
The defendant moves to dismiss this action on the grounds that the ordinance in question is unconstitutional on its face and as applied to her, or, in the alternative, to dismiss the information as defective pursuant to Criminal Procedural Law § 170.35 (1).
Background
On July 25, 2006 the defendant herein went to John J. Burns Park in the Town of Oyster Bay, with two other volunteers for Jews for Jesus, intending to distribute free religious literature and/or to walk through the park and speak with people about their religious beliefs. They were met by the Town’s Commissioner for Public Safety who told them they could not engage in either of these activities. The police arrived at the request of Town officials and escorted the defendant and her colleagues out of the park.
The defendant submitted the affirmation of Frederick H. Nelson, Esq., attorney for Jews for Jesus. Mr. Nelson states that on July 25, 2006, he contacted “both the Nassau County Police law enforcement officials responsible for enforcement of Town of Oyster Bay Code § 168-16 and the Town Attorney for the Town of Oyster Bay.” He states that he spoke with Deputy Chief McKale of the Nassau County Police on July 25, 2006 “to determine the process for obtaining a permit to distribute literature within the Town of Oyster Bay,” and was advised by Deputy Chief McKale “that to the best of his knowledge no person had ever been given a permit to distribute literature in any public parks within the Town of Oyster Bay.” He further states that Deputy Chief McKale told him that “Jews for Jesus was allowed to enter the public parks to speak with people, but the police would arrest any Jews for Jesus personnel if anyone was offended by the discussion” and “the park officials would be authorized to issue a trespass citation.” Mr. Nelson attests that he spoke to someone in the Town Attorney’s office who confirmed the policies and indicated “that there was no permit process for literature distribution.”
In her affidavit, the defendant, Susan Mendelson, states that she called the Town’s offices on July 27, 2006 to find out how to *927 obtain a permit to distribute free religious literature in the Town’s parks. She received a call from Deputy Commissioner of Parks George Baptista later that day. “He advised me definitely that there was no permit process in place for the distribution of religious tracts and speaking to the public at Town parks.” The defendant returned to the park on August 1, 2006 where she distributed literature and discussed her religious beliefs with other citizens. She was given an appearance ticket charging her with violating Code of the Town of Oyster Bay § 168-16. In response to the instant motion the People filed a superceding information, dated December 6, 2006, which charged the defendant as follows:
“Violation of the Code of the Town of Oyster Bay, Chapter 168, Parks and Recreation, Section 168-16, to wit, Deponent observed: at approximately 7:15 p.m., in an area of the park specifically designated for a special concert, for which patrons were being seated, Defendant was distributing leaflets, brochures or pamphlets, constituting notice of the existence of an organization named ‘Jews for Jesus,’ and which leaflets, brochures or pamphlets were an appeal to join said organization; Deponent observed Defendant distributing said leaflets, brochures or pamphlets to the audience gathering for said concert, by walking throughout the aisles and Deponent also observed Defendant speaking with and addressing said patrons. Deponent approached Defendant who was unable to produce any evidence of having actual permission of the Town Board of the Town of Oyster Bay to distribute said literature or make such speech or address, and Defendant confirmed to Deponent that she did not have such permission.”
In opposition to the defendant’s motion, the Town asserts first that the ordinance is not unconstitutionally vague or indefinite, and secondly that the defendant is without standing to complain that the Town’s ordinance is unconstitutional as applied to her because “at no time prior to August 1, 2006 did Defendant or anyone on her behalf, apply to the Town Board of the Town of Oyster Bay, orally or in writing” for permission to distribute literature or speak to an audience in a Town park. George Baptista, Deputy Commissioner of Parks for the Town of Oyster Bay, submitted an affidavit in opposition to the defendant’s motion. He confirmed that he spoke to the defendant on July 27, 2006.
*928 “I advised Defendant that the Parks Department issued permits for picnics and fields use for sports [sic], but that any other applications for events, if any, would have to be made to the Town Clerk or the Town Board. I never advised Defendant that there was no permit she could acquire that would authorize her to distribute free religious literature at Town Parks.”
In reply, counsel for the defendant submitted copies of a portion of the Town’s responses to the defendant’s September 8, 2006 Freedom of Information Law (FOIL) request for “all permit applications and permits granted or denied by the Town Board under § 168-16 of the Town of Oyster Bay Code for the last five (5) years.” The Town produced 441 pages of documents in response. Defense counsel states that one half of the applications related to parade permits. The balance consisted of copies of requests from, and permits issued to, a host of sectarian and nonsectarian organizations for use of Town facilities for a wide variety of activities. Permits were issued, inter alia, to use Town parks to hold easier egg hunts, charity car washes and a “Community Santa Detail” as well as a permit granted to the Midway Jewish Center to hold a religious ceremony at Tinker’s Pond on September 24, 2006. Almost all of the applications for permits were addressed to the Parks Department or to the Commissioner of Parks directly and all of the permits were issued by the Commissioner of Parks for the Town of Oyster Bay and signed by a Deputy Commissioner of Parks “on behalf of the Town Board.” There were no applications addressed to the Town Board and no permits issued directly by the Town Board.
Standing
Turning first to the Town’s assertion that the defendant is without standing to challenge the constitutionality of the ordinance in question based on the fact that she never applied to the Town Board for permission to engage in the prohibited activities.
To have standing to challenge the constitutionality of the ordinance the defendant herein must satisfy three elements: “(1) [she] must have suffered an injury in fact; (2) the injury must be traceable to the [Town’s] challenged conduct and not the result of the independent action of some third party; and (3) it must be likely that the injury will be redressed by a favorable decision.” (Desert Outdoor Adv., Inc. v City of Moreno Val., 103 F3d 814, 818 [9th Cir 1996], citing Medina v Clinton, 86 F3d 155, 157 [9th Cir 1996].)
*929 The court finds that the defendant has satisfied all three elements. She suffered an injury in fact when the Town brought this action against her. The injury is directly traceable to the Town’s conduct in passing this ordinance and prosecuting the defendant for a violation of same. Finally, a declaration that this ordinance is unconstitutional would redress the defendant’s injury by allowing her to speak to Town residents about her religious beliefs and distribute free literature without obtaining a permit. Accordingly, the court finds that the defendant has standing to challenge the constitutionality of the ordinance in question.
Discussion
There is a strong presumption that a statute duly enacted by the Legislature is constitutional, and before declaring a law unconstitutional, the invalidity of the law must be demonstrated beyond a reasonable doubt. (People v Pagnotta, 25 NY2d 333, 337 [1969].) The strong presumption of constitutionality applies not only to enactments of the Legislature but to ordinances of municipalities as well. (Marcus Assoc. v Town of Huntington, 45 NY2d 501 [1978].) However, the presumption of constitutionality usually accorded legislative decisions does not apply to the review of an ordinance where First Amendment rights are at issue. (Blasecki v City of Durham, N.C., 456 F2d 87 [4th Cir 1972].) In such cases, the court must inquire instead whether the municipality has “compelling governmental interests unrelated to speech which justify time, place, and manner regulations” on the exercise of First Amendment rights and, if so, “whether the ordinance’s requirements are drawn with narrow specificity and are no more restrictive than necessary to serve those interests” (Hickory Fire Fighters Assn., Local 2653 of Intl. Assn. of Fire Fighters v City of Hickory, N. C., 656 F2d 917, 923 [4th Cir 1981]).
The First Amendment to the United States Constitution provides: “Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.”
The freedoms of speech and the press secured by the First Amendment against abridgment by the federal government are similarly secured to all persons against abridgment by the State, and its municipal subdivisions as well, by the Fourteenth Amendment. (Schneider v State [Town of Irvington], 308 US 147 [1939].)
*930 The defendant challenges section 168-16 of the Code of the Town of Oyster Bay on the grounds that the ordinance in question is unconstitutional on its face and as applied to her. With respect to the first claim, she asserts that the ordinance is “vague, indefinite and lacking in ascertainable standards.” Additionally, she asserts that the ordinance gives the Town Board “unfettered discretion” with respect to who shall be granted a permit.
The Town asserts that the ordinance in question does not interfere with the defendant’s First Amendment right of freedom of speech but rather is a reasonable regulation designed to protect public order and public safety and to effectively manage public property. Moreover, it asserts that, when read in conjunction with related sections of the code, the ordinance in question is not unconstitutionally vague but serves a specific public purpose to preserve order and to protect the citizens and residents of the Town of Oyster Bay. “It is sufficiently explicit so as to inform those who are subject to it as to the conduct they may or may not perform.”
Section 168-16 of the Code of the Town of Oyster Bay is entitled “Public addresses, entertainments or parades,” and provides as follows:
“No person shall erect any structures, stand or platform; hold any meeting; perform any ceremony; make a speech, address or harangue; exhibit or distribute any sign, placard, notice, declaration or appeal of any kind or description; exhibit any dramatic performance or the performance in whole or in part of any interlude, tragedy, comedy, opera, ballet, play, farce, minstrelsy, dancing, entertainment, motion picture, public fair, circus, juggling, ropewalking or any other acrobatics or show of any kind or nature; or run or race any horse or other animal, or, being in or on a vehicle, race with another vehicle or horse, whether such race is founded on any stake, bet or otherwise, in any park or beach except by special permission of the Town Board. No parade, drill or maneuver of any kind shall be conducted, nor shall any procession form for parade or proceed in the park without special permission of the Town Board.” (Emphasis added.)
The clear language of the ordinance of the Town of Oyster Bay in question reveals that it prohibits a wide range of constitutionally protected activities, including speech, without first obtaining “special permission of the Town Board.”
*931 A law requiring prior administrative approval of speech falls within the prior restraint rubric (Lusk v Village of Cold Spring, 475 F3d 480 [2d Cir 2007]). The Supreme Court of the United States has repeatedly affirmed that “a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional.” (Shuttlesworth v Birmingham, 394 US 147, 150-151 [1969].) In addition the Court “made clear that a person faced with such an unconstitutional licensing law may ignore it and engage with impunity in the exercise of the right of free expression for which the law purports to require a license” (id. at 151).
In determining the nature and extent of constitutionally permissible limitations on First Amendment freedoms the courts have recognized differences between public and nonpublic forums. The mere fact that members of the public are free to visit property owned or operated by the government does not mean that such property becomes a “public forum” for the purposes of the First Amendment. (Greer v Spock, 424 US 828, 836 [1976].) However, public places
“historically associated with the free exercise of expressive activities, such as streets, sidewalks, and parks, are considered, without more, to be ‘public forums’. ... In such places, . . . the government may enforce reasonable time, place, and manner regulations. . . . Additional restrictions such as an absolute prohibition of a particular type of expression will be upheld only if narrowly drawn to accomplish a compelling governmental interest.” (United States v Grace, 461 US 171, 177 [1983] [citations omitted].)
In 1951, the Supreme Court of the United States found that a New York City ordinance requiring a permit prior to holding a public worship meeting on the city streets was an unconstitutionally invalid prior restraint on the exercise of First Amendment rights. (Kunz v New York, 340 US 290 [1951].) In its decision the Court referred to a number of its earlier decisions.
“In considering the right of a municipality to control the use of public streets for the expression of religious views, we start with the words of Mr. Justice Roberts that ‘Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, *932 communicating thoughts between citizens, and discussing public questions.’ Hague v. C.I.O, 307 U. S. 496, 515 (1939). Although this Court has recognized that a statute may be enacted which prevents serious interference with normal usage of streets and parks, Cox v. New Hampshire, 312 U. S. 569 (1941), we have consistently condemned licensing systems which vest in an administrative official discretion to grant or withhold a permit upon broad criteria unrelated to proper regulation of public places” (at 293-294).
Additionally, the ordinance in question also requires an individual to obtain a special permit prior to distributing literature. Our courts have consistently recognized the right to distribute leaflets, tracts and handbills as a constitutionally protected form of speech. “It is a venerable and inexpensive method of communication that has permitted citizens to spread political, religious and commercial messages throughout American history, starting with the half a million copies of Thomas Paine’s Common Sense that fomented the America Revolution.” (Jobe v City of Catlettsburg, 409 F3d 261, 264 [6th Cir 2005], citing Lovell v City of Griffin, 303 US 444, 452 [1938].) As with limitations on other First Amendment rights, municipalities are permitted to impose only reasonable time, place and manner restrictions on leafletting. (Heffron v International Soc. for Krishna Consciousness, Inc., 452 US 640 [1981].)
The court finds that the cases cited by the Town Attorney in support of its claim that the licensing requirements of the ordinance are a legitimate exercise of its responsibilities as a property owner are inapposite. For instance, Postal Service v Council of Greenburgh Civic Assns. (453 US 114 [1981]) involved the placing of “unstamped mailable” material in private letter boxes, not leafletting in a public park. Greer v Spock (424 US 828 [1976]), also cited by the People, involved distributing political literature on a military base. In that case the Supreme Court’s decision demonstrates the distinction between the facts in that case and the case before us. “The notion that federal military reservations, like municipal streets and parks, have traditionally served as a place for free public assembly and communication of thoughts by private citizens is thus historically and constitutionally false” (at 838).
Likewise, Adderley v Florida (385 US 39 [1966]) involved protestors who trespassed on the grounds of a state owned jailhouse, after being asked to leave by the Sheriff, and Interna *933 tional Soc. for Krishna Consciousness, Inc. v Lee (505 US 672 [1992]) dealt with a public airport which the Court found was not a traditional public forum requiring a higher level of scrutiny regarding restrictions on First Amendment rights. Jews for Jesus Inc. v Port of Portland (172 Fed Appx 760 [9th Cir 2006] [mem decision annexed to People’s mem of law]) also deals with leafletting in an airport, a nonpublic forum. In addition, the court found that there was no basis in the record for the appellants’ claim that they would be arrested if they attempted to leaflet without a permit.
In addition, another difficulty with respect to the Town’s ordinance now under consideration is not only that its license requirement acts as a prior restraint on the exercise of First Amendment rights, but that the discretion placed in the hands of the Town Board is unfettered and without guidelines of any sort. There is nothing in the ordinance which requires the Town to issue a permit.
“The ordinance carries no command to grant an application, neither does it prescribe the criteria or standards upon which an application is to be denied . . . [W]hen the ordinance is altogether silent as to when and under what circumstances the permit shall or shall not be granted, then there is no way to find out what would constitute legal discretion. Only unfettered power remains. . . .
“We are, therefore, of the opinion that this ordinance is indeed unconstitutional on its face and cannot be squared with constitutional guarantees” (Strother v Thompson, 372 F2d 654, 657 [5th Cir 1967]).
“It is settled by a long line of recent decisions of this Court that an ordinance which, like this one, makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official — as by requiring a permit or license which may be granted or withheld in the discretion of such official — is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms.” (Shuttlesworth v Birmingham, supra at 151 [internal quotation marks omitted], quoting Staub v City of Baxley, 355 US 313, 322 [1958].)
The ordinance at issue in this case does not provide the Town Board with any guidelines whatsoever in the exercise of its *934 discretion to grant or deny a permit to one who wishes to exercise a number of First Amendment rights in the public parks of the Town of Oyster Bay. It does not purport to regulate merely the time, place and manner of such conduct, as the Supreme Court has time and again permitted; it bars such conduct altogether unless “special permission” is obtained from the Town Board.
Addressing the defendant’s claim that the ordinance is unconstitutional as applied to her, the court finds that, based on the evidence submitted with respect to the defendant’s motion, she has sustained her claim. The Town does not deny that it refused to allow the defendant to distribute free religious literature, or to speak to other individuals in the park about her religious beliefs, on two occasions. The Town acknowledges that the defendant contacted the Town on July 27, 2006 after she was first removed from the park and that she spoke to Deputy Commissioner Baptista. Deputy Commissioner Baptista states that he told the defendant that the Parks Department issued permits for picnics and sports activities, but that any other application would have to be made to the Town Clerk or the Town Board. The Town Attorney asserts that a letter addressed to the Town Board would have been sufficient to seek the permission the defendant required. However, the documentary evidence produced in response to the defendant’s FOIL request reveals there were no applications for permits made directly to the Town Board. Most of the applications for the use of the parks for a myriad of activities were made directly to the Parks Department and all of the permits were issued exclusively by the Parks Department “on behalf of the Town Board.” All of the above belies the Town’s assertions that the defendant did not apply “orally or in writing” for permission to speak at a Town park and that Deputy Commissioner George Baptista is not “a Town Official in charge of granting the permission of the Town Board contemplated in the ordinance at issue.” Instead, it is clear from the evidence submitted that the defendant attempted to apply to a Town official authorized to entertain the defendant’s application and he specifically refused to do so.
Therefore, based on the above, the court finds that section 168-16 of the Code of the Town of Oyster Bay acts as a prior restraint on the exercise of First Amendment rights. The clear language of the ordinance in question reveals that it imposes an absolute bar to various forms of speech and that it does not contain the reasonable time, place, and manner restrictions *935 which our courts require to provide safeguards for First Amendment liberties. In addition, the ordinance contains no guidelines, standards, or criteria upon which a permit will be granted or denied. Therefore, the court finds that the ordinance in question vests in the Town Board of the Town of Oyster Bay unfettered discretion in determining whether to grant or deny “special permission” to engage in a host of constitutionally protected activities. Finally, the court finds that in the instant case the ordinance in question was unconstitutionally applied to the defendant herein when a Town official, authorized to entertain her application for a permit to distribute religious leaflets and to engage citizens in conversation about religion in a Town park, refused to consider her application. Accordingly, the defendant’s motion to dismiss this action on the grounds that the ordinance in question is unconstitutional on its face and as applied to this defendant must be granted.
Turning next to the defendant’s claim that the accusatory instrument is facially insufficient, without conceding that the original information filed with the court was defective, the People filed a superceding information dated December 6, 2006. CPL 100.40 provides that an information is facially sufficient if: (1) it conforms to the requirements of CPL 100.15; (2) the non-hearsay facts stated in the information, together with any supporting depositions, establish reasonable cause to believe that the defendant has committed the crime alleged in the accusatory portion of the information; and (3) the nonhearsay allegations of the factual portion of the information and/or any supporting deposition establish each and every element of the offense charged and the defendant’s commission thereof. CPL 100.15 provides that every accusatory instrument must contain two separate parts: (1) an accusatory portion designating the offense charged, and (2) a factual portion containing evidentiary facts which support or tend to support the charges stated in the accusatory portion of the instrument. The facts set forth must provide reasonable cause to believe that the defendant has committed the crime alleged in the accusatory portion of the accusatory instrument. (People v Dumas, 68 NY2d 729 [1986].) When these requirements are met, the information states a prima facie case and is sufficient. (People v Alejandro, 70 NY2d 133 [1987].)
On a motion to dismiss for facial insufficiency, the court’s review is limited to whether or not the People’s allegations, as stated in the accusatory instrument, are facially sufficient. The *936 facts alleged need only establish the existence of a prima facie case, even if those facts would not be legally sufficient to prove guilt beyond a reasonable doubt. (People v Jennings, 69 NY2d 103 [1986].) In assessing the facial sufficiency of an accusatory instrument, the court must view the facts in a light most favorable to the People. (People v Gibble, 2 Misc 3d 510 [Crim Ct, NY County 2003].) The allegations only need to make out a prima facie case and need not establish the defendant’s guilt beyond a reasonable doubt. (People v Henderson, 92 NY2d 677 [1999].)
Applying these principles to the case at hand, this court concludes that the superceding information is facially sufficient in that it alleges that while in a Town park on August 1, 2006 the defendant engaged persons in conversation and distributed leaflets which were an appeal to join Jews for Jesus.
Accordingly, based on the above, the defendant’s motion to dismiss this action on the grounds that section 168-16 of the Code of the Town of Oyster Bay is unconstitutional on its face and as applied to her is granted; and it is further ordered that the defendant’s motion to dismiss the information as defective pursuant to CPL 170.35 (1) is denied.