OPINION OF THE COURT
Andrew M. Engel, J.
The defendant is charged with official misconduct and obstructing governmental administration in the second degree in violation of Penal Law §§ 195.00 (2) and 195.05, respectively.
The defendant previously moved to dismiss both charges, alleging that the Special District Attorney lacked authority to prosecute, pursuant to County Law § 701, and that the misdemeanor information was defective within the meaning of CPL 170.30 (1) (a), 170.35 and 100.40 (1). By decision and order of this court (Engel, J.) dated March 29, 2011 the court found that the Special District Attorney acted within his authority in recommencing this prosecution, but found the misdemeanor information to be facially insufficient, being supported exclusively by photocopies of public documents and an unsigned, uncertified transcript of an examination before trial in a separate civil proceeding and failing to set forth nonhearsay allegations establishing every element of the crimes charged.
Following an appeal by the People, the Appellate Term, 9th and 10th Judicial Districts found that the defendant “ma[de] no claim that the attached documents constituted inadmissible hearsay[;]” and “because defendant had failed to object to the admissibility of the attached documentation on hearsay grounds, the issue had been waived and was not properly before the court” (People v Lemma, 37 Misc 3d 143[A], 2012 NY Slip Op 52289[U], *1, *2 [2012] [citations omitted]). As a result of this finding, the Appellate Term reversed and “remitted to the *402 District Court for a new determination of the merits of defendant’s motion to dismiss the accusatory instrument on the ground that it was legally insufficient” (id. at *2). As such, this court is now constrained to limit its review to the jurisdictional sufficiency of the misdemeanor information.
The obvious hearsay nature of the factual allegations notwithstanding, the misdemeanor information herein will be found facially sufficient where it “substantially conforms to the requirements prescribed in [CPL] 100.15” (CPL 100.40 [1] [a]), containing an accusatory part designating the offenses charged (CPL 100.15 [1], [2]) and a factual part “containing] a statement of the complainant [based upon personal knowledge or upon information and belief] alleging facts . . . supporting or tending to support the charges.” (CPL 100.15 [1] [3].) Additionally, “the factual part of the information, together with those of any supporting depositions which may accompany it, [must] provide reasonable cause to believe that the defendant committed the offense charged in the accusatory part of the information.” (CPL 100.40 [1] [b].)
“ ‘Reasonable cause to believe that a person has committed an offense’ exists when evidence or information which appears reliable discloses facts or circumstances which are collectively of such weight and persuasiveness as to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that such offense was committed and that such person committed it.” (CPL 70.10 [2].)
Official Misconduct
The first count against the defendant is official misconduct, in violation of Penal Law § 195.00 (2), which provides, “A public servant is guilty of official misconduct when, with intent to obtain a benefit or deprive another person of a benefit: ... 2. He knowingly refrains from performing a duty which is imposed upon him by law or is clearly inherent in the nature of his office.”
The misdemeanor information herein sets forth the following factual allegations:
“1. The Defendant was employed as a Police Officer and Detective by the Nassau County Police Department from January 23, 1987 through February 24, 2009;
*403 “2. The Defendant was the Investigating and Carrying Detective on an alleged robbery of March 26, 2005;
“3. On May 27, 2005 one Raheem Crews was arrested for the alleged robbery of March 26, 2005;
“4. The Defendant knew that the date of the alleged robbery for which Raheem Crews was arrested was March 26, 2005;
“5. Raheem Crews was incarcerated from March 24, 2005 through March 31, 2005;
“6. The Defendant was informed, and verified, on June 1, 2005 that Raheem Crews was incarcerated on March 26, 2005;
“7. By virtue of learning of Raheem Crews’ incarceration on March 26, 2005, the defendant was aware that Raheem Crews could not have committed the alleged robbery on that date;
“8. The Defendant decided to keep the fact of Raheem Crews’ incarceration on March 26, 2005 to himself and did not exonerate Raheem Crews from the alleged robbery of March 26, 2005;
“9. Following his arrest, Raheem Crews was incarcerated on the charges of robbery in the Second and Third Degrees from May 28, 2005 through September 29, 2005;
“10. On October 17, 2005 the charges relating to the May 27, 2005 arrest of Raheem Crews were dismissed.”
Accordingly, the misdemeanor complaint herein shall be found facially sufficient if these factual allegations, along with the accompanying documents, providing reasonable cause to believe that the defendant was a (1) public servant, (2) who refrained from performing an act, (3) imposed upon him by law or one which is clearly inherent in the nature of his office as a police officer, and (4) did so with the intent to benefit himself or deprive another person of a benefit. Each of these elements shall be addressed separately hereinafter.
Public Servant
The misdemeanor information clearly alleges that the defendant was a Nassau County police officer and detective at the time in question herein. The defendant does not contest this allegation, which is supported by the following questions and answers in the transcript of an examination before trial conducted in a *404 separate civil suit brought by Raheem Crews against the County of Nassau, the defendant and others:
“Q. Are you currently employed?
“A. Yes.
“Q. Where?
“A. Nassau County Police Department.
“Q. What’s your current position?
“A. Detective.
“Q. How long have you been a detective.
“A. Since October 2000.
“Q. When did you start working for the Nassau County Police Department?
“A. January 23, 1987
“Q. What position were you in when you first started?
“A. Police Officer.”
“[I]t unquestionable that a ‘regular patrolman’. . . is a public servant under section 10.00 (subd 15, par [a]) of the Penal Law . . . .” (People v Lewis, 87 Misc 2d 806, 807 [Crim Ct, Queens County 1976]; see also People v Feerick, 93 NY2d 433 [1999].)
Refrained from Performing an Act
The misdemeanor information clearly alleges that the defendant knowingly failed to disclose the fact that, on June 1, 2005, he learned and confirmed that Raheem Crews was incarcerated on March 26, 2005, the date of the alleged robbery for which Raheem Crews was arrested by another officer. This allegation is supported by the following questions and answers in the transcript of an examination before trial conducted in a separate civil suit brought by Raheem Crews against the County of Nassau, the defendant and others:
“Q. What is that?
“A. It is Lorenzo Miller’s statement that he gave me or notes that I took when he was talking.
“Q. That date indicated on this is 6/1/05; is that correct?
“A. Yes.
“Q. Does that indicate when you spoke to Lorenzo Miller?
“A. Yes.
“Q. Did you ask Lorenzo Miller if Raheem Crews was present at the time of the robbery?
*405 “A. I don’t recall, but I had talked to him about the specifics of the robbery.
“Q. Did Mr. Miller admit to you that he participated in the robbery?
“A. Yes.
“Q. Did Mr. Miller tell you if anybody else was involved in the robbery at that time?
“A. Bakie.
“Q. Did he indicate to you if Raheem Crews participated in the robbery at that time?
“A. I don’t recall.
“Q. Did he indicate to you if Tray Pound [Crews’ ‘street name’] participated in the robbery?
“A. I don’t recall.
“[Following an off the record consultation with counsel]
“A. When I laid out the facts, he had said that Raheem was in jail at the time of the robbery, so I asked him to elaborate on that.
“Q. What did he say?
“A. They were hanging out. I don’t remember the address, where he was, on the corner, and he said that two dudes came up. I don’t know if they were in plain clothes. I don’t know if they were officers, probation or what, and scooped him up and whisked him away.
“Q. Did you speak to Raheem Crews after speaking to Miller to see if he was in jail at the time?
“A. No.
“Q. Did you look up any records to see if Raheem Crews was in prison at the time?
“A. Yes.
“Q. What records did you look up?
“A. Again, in the department computer, JCON, which is the jail system.
“Q. What did that come up with?
“A. I don’t remember the exact dates, but the parameters fit that he was in jail at the time.
“Q. When did you learn this, on June 1st?
“A. On June 1st.
“Q. On June 1st, did you know where Raheem Crews was?
*406 “A. No.
“Q. What did you do with that information that you got from JCON.
“A. I kept it to myself and said ‘Let the chips fall where they may.’ ”
Duty Imposed by Law or Clearly Inherent in the Nature of His Office as a Police Officer
The defendant argues that any omission he may have made was a discretionary act for which he cannot be prosecuted. According to the defendant, and uncontested by the People, probable cause existed for the arrest of Raheem Crews in relation to the robbery of March 26, 2005. One of the three alleged perpetrators identified Crews as an accomplice, and the victim of the alleged robbery picked Crews out of a photo array as one of the individuals who robbed him on March 26, 2005. Additionally, Crews was not arrested by the defendant, but by another detective.
Based on these allegations, as supported by the documents the People annex to the misdemeanor complaint, the defendant suggests:
“Once the complaint was investigated and arrests were made based on probable cause, the essential function of a police detective was fulfilled. Felony complaints were filed with the court, an assistant district attorney was assigned and the defendants were represented by counsel and arraigned on the accusatory instruments. By definition, the role of the detective became secondary to that of the District Attorney in prosecuting the case. Lemma’s conduct, considered in this context, as it must, was not a breach of his duty within the meaning the statute.” (Garber affirmation, Dec. 31, 2010 at 15.)
In opposition, the People argue “that by failing to act on the exculpatory information, [defendant] knowingly refrained from performing a duty to disclose exculpatory material which is clearly inherent in the nature of his office.” (People’s mem of law, Feb. 14, 2011 at 16.) Relying on People v Russo (109 AD2d 855 [2d Dept 1985]), the People further argue, “the police do, in fact, have a duty to disclose exculpatory material in their control.” (People’s mem of law, Feb. 14, 2011 at 20.)
Criminal responsibility for official misconduct will only lie where the duty one fails to perform “is imposed upon him by law or is clearly inherent in the nature of his office.” (Penal *407 Law § 195.00 [2].) “A duty which is ‘clearly inherent in the nature of the office’ encompasses those unspecified duties that are so essential to the accomplishment of the purposes for which the office was created that they are clearly inherent in the nature of the office.” (People v Lynch, 176 Misc 2d 430, 433 [Rockland County Ct 1998] [citation omitted]; see also People v Ridge, 25 Misc 3d 432 [Nassau Dist Ct 2009].) Excluded from criminal responsibility is
“ ‘unauthorized conduct or neglect of duty, which, though possibly a proper basis for removal or disciplinary action in some instances, does not seem a fair basis for the automatic imposition of criminal sanctions.’ Staff Notes of the Commission on Revision of the Penal Law. Proposed New York Penal Law. McKinney’s Spec. Pamph. (1964), p. 371.” (William C. Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 195.00 at 166 [2010 ed]; see also People v Feerick.)
Before criminal responsibility will attach to an alleged “willful failure of avoiding a responsibility inherent in the nature of his office, that responsibility must be precisely defined.” (People v Mackell, 47 AD2d 209, 218 [2d Dept 1975] [conviction of District Attorney of official misconduct for failing to disclose knowledge of scheme to defraud reversed].) Viewed in a light most favorable to the People (People v Martinez, 16 Misc 3d 1111[A], 2007 NY Slip Op 51387[U] [Nassau Dist Ct 2007]; People v Delmonaco, 16 Misc 3d 526 [Nassau Dist Ct 2007]; People v Mendelson, 15 Misc 3d 925 [Nassau Dist Ct 2007]), and without giving them an overly restrictive or technical reading (People v Casey, 95 NY2d 354 [2000]; People v Baumann & Sons Buses, Inc., 6 NY3d 404 [2006]), neither the misdemeanor information nor the accompanying documents provide reasonable cause to believe that the defendant failed to perform a duty imposed upon him by law or inherent in the nature of his office.
The only allegation addressing the duty allegedly omitted by the defendant is that “the defendant decided to keep the information to himself that Raheem Crews was incarcerated on March 26, 2005, and did not exonerate Raheem Crews from the above mentioned robbery.” (Misdemeanor complaint, Oct. 5, 2010.) The only argument raised by the People in support of this necessary element is that “the police do, in fact, have a duty to disclose exculpatory material in their control,” and that *408 “a duty to disclose exculpatory information is . . . inherent in the nature of [defendant’s] office [and] that he had . . . knowledge of such a duty.” (People’s mem of law, Feb. 14, 2011 at 20-21.)
While the People are correct that police officers have an obligation to disclose exculpatory information in their possession (see People v Russo, 109 AD2d 855 [2d Dept 1985]), the People’s reliance on this principle is misplaced. The defendant’s failure to disclose the fact that Raheem Crews was incarcerated on March 26, 2005 simply was not a violation of such a duty.
“The Brady[*] rule does not require that a prosecutor produce evidence of which the defendant is aware or may reasonably be held to be aware, however exculpatory (People v Doshi, 93 NY2d 499, 506 [1999]; see also People v LaValle, 3 NY3d 88, 109-110 [2004]; People v Gray, 284 AD2d 664, 665 [2001]; People v Quinones, 228 AD2d 796, 798 [1996]).” (People v McKenna, 24 Misc 3d 1, 4-5 [App Term, 2d Dept, 9th & 10th Jud Dist 2009], lv denied 12 NY3d 856 [2009]; see also People v Singh, 5 AD3d 403 [2d Dept 2004]; People v McGovern, 158 AD2d 551 [2d Dept 1990], lv denied 76 NY2d 739 [1990].)
There is no question that Raheem Crews knew, or should have known, that he was incarcerated on March 26, 2005 and could not have committed the alleged robbery on that date. This, as revealed by the examination before trial transcript upon which the People rely, was one of the reasons given by the defendant for not taking any action upon his discovery of Raheem Crews’ incarceration:
“Q. What I am asking is, if you, as a detective, learned of information that exonerated a person who was charged with a crime, did you have a duty to affirmatively report that information to somebody at the police department?
“A. I probably would have told the ADA if I had known who it was. At that point, like I said, it was two weeks later, a week almost a week later.
“Q. Well, when did learn?
“A. All right. He was arrested, like I said. It is all based on a typographical error, okay? When I read the charges at the arraignment for the date of March 26th, if that was the date, Raheem would *409 have said ‘Hey, I was in jail.’ At that point, or that night, if he wold have been more cooperative with the detectives and said, ‘I was in jail,’ they would have found out, gone to JCON, like I did a week later, and say ‘Hey, he was in jail. Let’s release him and further investigate this and go back to the victim,’ but he didn’t.”
The above notwithstanding, even if the information obtained by the defendant constituted Brady material:
“Under Brady v Maryland (supra) the prosecution is required to disclose, in advance of trial, evidence which is favorable to the accused. In order to safeguard the defendant’s rights under Brady, the prosecution, as well as law enforcement officials, are under a duty to diligently preserve all materials which may be subject to disclosure” (People v Saddy, 84 AD2d 175, 178 [2d Dept 1981] [citation omitted]; see also People v Springer, 122 AD2d 87 [2d Dept 1986]).
As is evident from the foregoing, if the defendant had any Brady obligation, that obligation did not require him to disclose exculpatory information immediately upon his discovering same. Whatever legal obligation he may have had required him to preserve the information and to disclose same “in advance of trial.” There is no allegation that the defendant altered, secreted or destroyed the information concerning the defendant’s incarceration on March 26, 2005, and that information was disclosed prior to any trial of Raheem Crews.
Beyond this alleged Brady violation, the People do not suggest, either in the misdemeanor information, the accompanying documents or in opposition to this motion, where this alleged inherent duty comes from or how it was to be exercised. The People do not suggest to whom the defendant was to disclose the information concerning Crews’ incarceration, how he was to report this information or when he was obligated to report same. Clearly, the defendant had no authority to simply release Crews upon discovering this information; he had neither the means nor the authority to disclose same directly to the court; nor is there any allegation that he knew who the District Attorney was who was handling the Crews prosecution, so that he could disclose the information to the prosecutor. In fact, the evidence submitted by the People accompanying the misdemeanor information is to the contrary:
“Q. What I am asking is, if you, as a detective, *410 learned of information that exonerated a person who was charged with a crime, did you have a duty to affirmatively report that information to somebody at the police department?
“A. I probably would have told the ADA if I had known who it was. At that point, like I said, it was two weeks later, a week almost a week later.”
While the defendant may have had a moral, ethical and departmental obligation to seek out the appropriate prosecutor and/or the arresting officer to advise them of what he had learned regarding Raheem Crews’ incarceration, such disclosure was not, under the circumstances alleged herein, “an act as to which a duty of performance is imposed by law.” (Penal Law § 15.00 [3].)
Intent to Obtain a Benefit or Deprive Another Person of a Benefit
The defendant alleges that there are no factual allegations demonstrating that he intended to obtain a benefit or deprive another person of a benefit from failing to disclose that Raheem Crews was incarcerated on March 26, 2005. The defendant points to the facts, as set forth in the misdemeanor information and accompanying documentation, that he did not know Raheem Crews; he did not arrest Raheem Crews; he did not process the arrest of Raheem Crews; he did not know that the arrest paperwork and felony complaint for Raheem Crews’ prosecution, prepared by another officer, contained the wrong date of incident; and he did not know if Raheem Crews was still in custody following his arraignment.
The defendant further alleges, relying on People v Feerick, that the accusatory instrument and accompanying documentation do not demonstrate that the failure to disclose the fact of Crews’ incarceration on March 26, 2005 “was anything other than ‘the product of inadvertence, incompetence, blunder, neglect or dereliction of duty [which] no matter how egregious [should] more properly be considered in a disciplinary rather than criminal forum.’ ” (Garber affirmation, Dec. 31, 2010, ¶ B [b] [1].)
“[T]he People do not assert, nor have they ever asserted, that defendant intended to obtain a benefit.” (People’s mem of law, Feb. 14, 2011 at 19 n 3.) Instead, the People argue that the defendant intended “to deprive Crews of a benefit, namely to be exonerated, and have ‘his’ liberty restored . . . .” (People’s mem of law, Feb. 14, 2011 at 19.)
*411 According to the People, the defendant’s intent “is inferable from defendant’s deliberate failure to act on the exculpatory information he obtained.” (People’s mem of law, Feb. 14, 2011 at 19.) Relying on People v Steinberg (79 NY2d 673 [1992]), the People point to the defendant’s knowledge of Crews’ incarceration and his failure to disclose this information.
The People confuse knowledge with intent. In People v Steinberg, the court very clearly distinguished between the two:
“The revised Penal Law, in accord with the modern trend, distinguishes between ‘intent’ and ‘knowledge.’ A person acts intentionally when there is a ‘conscious objective’ to cause the result proscribed by statute. By contrast, a person acts knowingly when there is an awareness that a particular element of a crime is satisfied” (id. at 680-681 [citations omitted]).
Put another way, “Intent is the actor’s conscious aim or objective in performing certain acts, while knowledge is an awareness that a particular element of a crime is satisfied.” (People v Cabassa, 79 NY2d 722, 732 [1992] [citation omitted]; see also Penal Law § 15.05 [1], [2].) The People here conflate the defendant’s knowing silence regarding the Crews’ incarceration on March 26, 2005, with his motive, or intent, in remaining silent.
While one’s intent may sometimes be inferred, where “there is no direct evidence of a defendant’s mental state,” the People simply saying that the defendant’s intent to keep Crews incarcerated can be inferred from his knowledge of Crews’ innocence does not make it so; there must be some factual allegation to permit such an inference. There is none found here within the four corners of the misdemeanor information or the accompanying documentation. To the contrary, there is ample direct evidence that such was not defendant’s intent.
The People rely upon the following exchange at the examination before trial of the defendant in a separate civil proceeding as their evidence of the defendant’s intent to keep Crews in jail:
“Q. What did you do with that information that you got from JCON.
“A. I kept it to myself and said ‘Let the chips fall where they may.’ ”
There is no reasonable interpretation of that exchange, however, which evinces a “conscious objective or purpose” to keep Crews incarcerated. To the contrary, given all of the surrounding evidence, as set forth in the accusatory instrument, i.e., the defend *412 ant did not know Crews; the defendant did not arrest Crews; the defendant did not complete the arrest paperwork or accusatory instrument with the wrong date of incident; the defendant did not even know Crews was still incarcerated, the only thing this evidence demonstrates is that the defendant kept silence with callous indifference, but without any specific intent whatsoever.
Contrary to the People’s argument, “Let the chips fall where they may” demonstrates that the defendant could care less what happened to Crews. Clearly, the evidence upon which the People rely demonstrates that it did not matter to the defendant if Raheem Crews was incarcerated or freed, convicted or exonerated. While it is clear the defendant knowingly failed to disclose Crews’ innocence, the accusatory instrument does not supply any evidence providing reasonable cause to believe that the defendant kept this information to himself with the intent to deprive Raheem Crews of anything.
“It may appear upon the record that the defendant [ ] [was] guilty of stupidity and veniality and [was] unreasonable in what [he] did. But these qualities are not criminal. And we cannot substitute a reasonable man test for the essential requirement of criminal intent. Without criminal intent there is no crime here.” (People v Mackell, 47 AD2d 209, 218-219 [2d Dept 1975] [conviction of District Attorney of official misconduct for failing to disclose knowledge of scheme to defraud reversed].)
Obstructing Governmental Administration in the Second Degree
The second count against the defendant is obstructing governmental administration in the second degree, in violation of Penal Law § 195.05, which provides, in pertinent part: “A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law ... by means of intimidation, physical force or interference, or by means of any independently unlawful act . . . .”
“The elements of the crime of obstructing governmental administration are (1) intent; (2) obstruction, impairment or perversion of the administration of law or governmental function, or preventing or attempting to prevent the performance of that function, by (3) intimidation, physical force or *413 interference or, alternatively, by an independently unlawful act” (People v Stumpp, 129 Misc 2d 703, 704 [Suffolk Dist Ct 1985] [citation omitted], affd 132 Misc 2d 3 [App Term, 2d Dept, 9th & 10th Jud Dists 1986]).
There are multiple elements of this alleged crime absent from the misdemeanor information herein.
As with the charge of official misconduct, there is no demonstration whatsoever that it was the defendant’s intent to obstruct, impair or pervert the administration of law, or prevent or attempt to prevent the performance of that function by failing to advise anyone that Raheem Crews was incarcerated on March 26, 2005. While his silence is demonstrated to have been the result of neglect, carelessness, callousness or indifference, this is not the same thing as a “conscious objective or purpose” to affect the administration of justice in any way.
Additionally, there are no facts set forth in the misdemeanor information, or the accompanying documents, which could support any allegation that the defendant engaged in intimidation, physical force or interference. It clearly is not alleged that the defendant intimidated, or even attempted to intimidate anyone. To the contrary, it is alleged that the defendant’s malfeasance was a passive one, failing to take some action. Similarly, it is not alleged that the defendant resorted to the use of physical force or physical interference, which are necessary if force or interference are alleged to be the manner in which the administration of law was obstructed. (People v Case, 42 NY2d 98 [1977].)
This leaves “an independently unlawful act” as the only other possible avenue available to the People upon which to allege an obstruction of the administration of law. The only independently unlawful act to which the People refer, however, is the alleged official misconduct which this court finds has not sufficiently been established by the misdemeanor information.
Based upon all of the foregoing, the court finds that neither of the charges, official misconduct or obstruction of governmental administration in the second degree, is legally sufficient, as set forth in the misdemeanor complaint and accompanying documentation.
Accordingly, defendant’s motion to dismiss the misdemeanor information is granted; and, it is hereby ordered, that the misdemeanor information is dismissed.

 Brady v Maryland, 373 US 83 (1963).