Iannacci, J.
(dissenting and voting to affirm the order, insofar as appealed from, in the following memorandum). Defendant was charged, in an information, with official misconduct (Penal Law § 195.00 [2]). As the majority points out, the issues raised by this appeal are whether the information sufficiently pleaded that a specified failure to act on defendant’s part was a knowing failure to perform a duty which is imposed upon him by law or is clearly inherent in the nature of his job as a police officer, and whether the information sufficiently pleaded that defendant had the requisite intent to deprive another person of a benefit.
The information, dated October 5, 2010, sets forth the elements of official misconduct (Penal Law § 195.00 [2]) and alleges that Raheem Crews, a nonparty to this proceeding, had been incarcerated from March 24, 2005 to March 31, 2005; that, on May 27, 2005, Crews was arrested for a street robbery alleged to have occurred on March 26, 2005 (while he had been incarcerated); that defendant was the “Investigating Detective and Carrying Detective of the case”; and that Crews was incarcerated from May 28, 2005 through September 29, 2005 on the charges of robbery in the second and third degrees for the incident alleged to have taken place on March 26, 2005.
According to the transcript of defendant’s testimony at a civil deposition, which transcript accompanied the information, an individual who had been involved in the robbery had identified Crews as having been a participant, and the victim *38 subsequently identified Crews from a photo array. This case became an “Impact Case” because the three individuals alleged to have been involved in the robbery (including Crews) were known to the police department as gang members. When Crews was arrested and charged with committing the robbery, the Nassau County detectives who prepared Crews’s felony complaint inadvertently set forth therein the wrong month for the date of his alleged crime. According to the felony complaint, the robbery occurred on April 26, 2005 instead of March 26, 2005. Defendant was not at work on the day of Crews’s arrest, did not prepare or sign the felony complaint, and was not at Crews’s arraignment.
On June 1, 2005, after Crews’s arraignment, one of the other individuals who was alleged to have been involved in the robbery was arrested. Defendant learned at that time that Crews had been in jail on the day of the robbery, on an unrelated matter, but defendant did not know whether Crews was still in jail for the robbery. Defendant assumed that the detectives who had prepared the felony complaint had recorded the correct date of the offense and that the fact of Crews’s incarceration on March 26, 2005 would have been “picked up by then” because Crews had already been arraigned. Defendant testified at his civil deposition as follows:
“Q. What I am asking is, if you, as a detective, learned of information that exonerated a person who was charged with a crime, did you have a duty to affirmatively report that information to somebody at the police department?
“MS. CHARTAN: Objection.
“A. I probably would have told the ADA if I had known who it was. At that point, like I said, it was two weeks later, a week, almost a week later.
“Q. Well, when did you learn?
“MS. CHARTAN: Objection. Wait a minute. He was in the middle of answering.
“A. All right. [Crews] was arrested. Like I said. It is all based on a typographical error, okay? When I read the charges at the arraignment for the date of March 26, if that was the date, Raheem would have said ‘Hey, I was in jail.’At that point, or that night, if he would have been more cooperative with the detectives and said, T was in jail,’ they would have found out, gone to JCON, like I did a week later, and say ‘Hey, he was in jail. Let’s release him and further investigate this and go back to the victim,’ but he didn’t.” (Emphasis added.)
*39 Defendant also testified that when he confirmed that Crews had been in jail on the date of the robbery, he kept it to himself “and said ‘[1]et the chips fall where they may.’ ” He did not recall testifying at the grand jury proceeding in August 2005. Nor did he recall speaking to the Office of the District Attorney during that period. Defendant did not know that Crews had been indicted on September 8, 2005.
The People argue on appeal that the information and supporting documents sufficiently allege that defendant had failed to perform a duty imposed upon him by law. However, the accusatory instrument does not plead a violation by defendant of a duty imposed by the United States or New York State Constitutions, which is the only alleged specifically prescribed duty alluded to by the People on appeal as having been violated by defendant. Indeed, even in opposition to defendant’s motion, the People have failed to demonstrate a violation by defendant of either Constitution that is subject to criminal prosecution. Moreover, for the reasons set forth below, contrary to the People’s contention, the information does not adequately plead that defendant had failed to perform any specific duty that is clearly inherent in the nature of his job.
While the People argue that the precise nature of the duty at issue is legal, and that therefore the absence of a precise definition of the duty defendant failed to perform does not render the accusatory instrument defective, I disagree and conclude that the legislature’s decision not to specifically define the “duty” at issue in Penal Law § 195.00 (2) evinces a legislative intent that it be treated as a factual determination (cf. People v Garson, 6 NY3d 604 [2006] [discussing the “duty” element of receiving reward for official misconduct in the second degree (Penal Law § 200.25)]), and, thus, needed to be spelled out with specificity in the accusatory instrument. Here, the People argue that the allegation in the information that defendant failed to “exonerate” an individual who had been arrested was jurisdictionally sufficient. While this statement alleges that defendant had refrained from acting, the information fails to allege, for example, any specific actions that are clearly inherent in the office of a police officer that defendant was required to take in order to “exonerate” Crews, so that defendant might prepare a defense to the charge against him. Indeed, the conclusory allegation that defendant failed to “exonerate” an individual is essentially an accusation of unethical behavior on defendant’s part, the criminalization of which is not the intent *40 of Penal Law § 195.00 (see Garson, 6 NY3d at 618; People v La Carrubba, 46 NY2d 658 [1979]; cf. People v Mackell, 47 AD2d 209, 219 [1975], affd 40 NY2d 59 [1976]).
I further find that the information is facially insufficient because it fails to “provide reasonable cause to believe” (CPL 100.40 [1] [b]), “establish, if true” (CPL 100.40 [1] [c]), and provide factual allegations that “support [ ] or tend[ ] to support” (CPL 100.15 [3]) the proposition that defendant harbored the requisite intent to deprive Crews of the benefits of exoneration or being freed from incarceration.
This is a case in which an individual had been arrested and incarcerated for several months for a burglary that defendant, a detective, later learned could not have been committed by that individual. However, the robbery victim made a positive photo array identification of Crews, the complaint was investigated and arrests were made based on probable cause, felony complaints were filed with the court, an assistant district attorney was assigned, and the individuals accused of participating in the robbery were each represented by counsel and arraigned on the accusatory instruments. No one from the Office of the Nassau County District Attorney or from the police department disclosed that Crews had been in jail on the date of the robbery, even though they all were handling the cases against Crews and the two other individuals who were arrested for the robbery.
Defendant’s misconduct was the product of inadvertence, incompetence, blunder, neglect and dereliction of duty and, no matter how egregious, it is not the proper subject for criminal prosecution. Rather, this kind of misconduct should be addressed in a disciplinary forum (see People v Feerick, 93 NY2d 433, 448 [1999]). I agree with the District Court’s statement that courts “cannot substitute a reasonable man test for the essential requirement of criminal intent” (People v Lemma, 39 Misc 3d 399, 412 [Nassau Dist Ct 2013], quoting Mackell, 47 AD2d at 218-219). Indeed, “[w]ithout criminal intent there is no crime” (Mackell, 47 AD2d at 219 [reversing the conviction of the District Attorney, among others, for official misconduct]).
Accordingly, I vote to affirm the order, insofar as appealed from.
Maraño, P.J., and Garguilo, J., concur; Iannacci, J., dissents in a separate memorandum.