IN THE SUPREME COURT OF THE STATE OF DELAWARE

MAURICIO HERNANDEZ-
MARTINEZ,

§
§
§
§
§
§
§
§
§
§
§
§
§

No. 179, 2022

Defendant Below,
Appellant,

Court Below: Superior Court
of the State of Delaware

v.

Cr. ID No. 2105008322(S)

STATE OF DELAWARE,

Appellee.

Submitted: October 25, 2023
Decided: November 29, 2023

Before **SEITZ**, Chief Justice; **VALIHURA**, and **GRIFFITHS**, Justices.

## <u>ORDER</u>

This 29th day of November, 2023, after careful consideration of the parties' briefs and the record on appeal, and after oral argument, the Court finds as follows:

(1)     At a plea hearing, Mauricio Hernandez-Martinez pled guilty to two counts in a six-count indictment for striking a pedestrian with a car and leaving the scene of a collision resulting in death.  Before sentencing, Martinez moved to withdraw his guilty plea based on mistakes made by his attorney and the trial judge during the plea hearing.  The Superior Court denied Martinez's motion.[1]  Because

---

[1] *State v. Hernandez-Martinez*, 2023 WL 3221888 (Del. Super. Ct. May 3, 2023).

there were fair and just reasons to allow Martinez to withdraw his guilty plea, we reverse and remand the case for further proceedings consistent with this order.

(2)　According to the record on appeal, Martinez was driving a car at night when the car in front of him slowed abruptly.[2]  Martinez moved into the oncoming traffic lane, a legal passing zone.  When changing lanes, Martinez realized that he struck something, which he said he thought was a sign, but continued driving.[3]  In fact, Martinez hit Robert Root, who was walking on the unlit backroad, wearing dark clothes, not carrying a light, and had opiates in his system.  Root died from his injuries.[4]  Martinez returned to the scene of the crash that night where he saw police but did not make his presence known.[5]

(3)　The police interviewed the two individuals in the car in front of Martinez.  The witnesses stated that they saw a white Nissan pass them at a high rate of speed.[6]  The witnesses stated that, after passing their car, the Nissan struck Root, who was walking east bound in the west bound lane.[7]  The Nissan continued away from the scene.  The dash camera in the witnesses' car captured the event.[8]

---

[2] App. to Appellant's Opening Br. at A34 [hereinafter "A__"].
[3] A34.
[4] A72-76.
[5] *Hernandez-Martinez*, 2023 WL 3221888, at *2.
[6] *Id.* at *1.
[7] *Id.*
[8] *Id.*

2

(4)    Days later, Martinez consulted an attorney, Andrew Whitehead, Esquire, because Martinez had seen a news story that Root was killed after being struck by a car.[9]  After recounting the facts stated above, Martinez told Whitehead that he wanted to "do the right thing," take responsibility for his actions, and avoid trouble for his brother, who owned the car that Martinez was driving.[10]

(5)    In May 2021, a grand jury indicted Martinez.  The indictment contained six counts: operation of vehicle causing death (Count I), leaving the scene of a collision resulting in death (Count II), driving without a valid license (Count III), inattentive driving (Count IV), unreasonable speed (Count V), and failing to report a collision resulting in injury or death (Count VI).[11]

(6)    Martinez agreed to plead guilty to Counts I and II of the indictment.  On October 4, 2021, the court held a plea hearing.  Before addressing the court, Martinez completed a Plea Agreement Form ("Plea Form").  The Plea Form listed Counts I and II of the indictment but Count I did not charge a crime because it omitted a required traffic offense under Chapter 41 of Title 21.[12]  Martinez also completed a

---

[9] A80.
[10] A61, A79.
[11] A12-13.
[12] 21 *Del. C.* § 4176A(a), titled "Operation of a vehicle causing death," states that "[a] person is guilty of operation of a vehicle causing death when, in the course of driving or operating a motor vehicle or OHV in violation of any provision of this chapter other than § 4177 of this title, the person's driving or operation of the vehicle or OHV causes the death of another person."  In other words, to charge Martinez with a crime under § 4176A(a), the State had to recite that he was driving the car, caused another's death, *and* committed another traffic offense under Chapter 41 of Title 21 other than § 4177 (driving under the influence of alcohol or drugs).

3

Truth-In-Sentencing Guilty Plea Form ("TIS"). The TIS, signed by Whitehead and Martinez, stated that the maximum sentence for Count I was 2.5 years and for Count II was 2 years.[13] When these maximum possible sentences were summed, however, the TIS incorrectly stated that the maximum combined sentence was 3.5 years instead of 4.5 years.[14] The incorrect maximum sentence calculation was defense counsel's error.[15] The TIS also contained contradictory answers about the right to own and possess a deadly weapon following conviction – one question stated that the right was forfeited, another said it was not.[16] Once again, the mistake was defense counsel's error.

(7) The court mistakenly carried the multiple errors over to the plea colloquy. It told Martinez that "[t]he maximum penalties that you face is three years and six months in jail . . .. Do you understand the maximum penalties that you face by pleading guilty?" Martinez responded that he did. The court then asked Martinez whether he understood the charges. As stated by the court: "[t]he plea, as Mr. Whitehead outlined, calls you to plead guilty to a charge of operating a motor vehicle causing death and leaving the scene of a collision resulting in death. Do you

---

[13] A36.
[14] A86-87.
[15] *Id.*; App. to Appellee's Answering Br. at B13, B16 [hereinafter "B__"].
[16] A36.

understand the two charges that you are pleading guilty to?" Martinez answered, "Yes."[17]

(8)     The court then read Count I – which did not contain the required underlying traffic offense in Chapter 41 of Title 21: "On November 7th of last year, 2020, here in Sussex County, State of Delaware, while in the course of driving a motor vehicle, you did cause the death of Robert Root.  Did you commit that offense?" Martinez responded "Yes."[18]  The court stated: "I'll find your pleas made knowingly, intelligently, and voluntarily."[19]  The State does not dispute that what the trial judge read during the plea colloquy for Count I did not charge a crime without including an underlying traffic offense.

(9)     The next month, and before sentencing, Martinez moved to withdraw his guilty plea, and later moved for an evidentiary hearing.  The court denied both motions.[20]  In May 2022, the court sentenced Martinez on Count I to 2.5 years at Level V, with credit for 229 days previously served, suspended after two years at Level V for 1 year at Level II; and on Count II 1.5 years at Level V, suspended after 1 year at Level V for II.[21]  Thus, the court sentenced Martinez to a total of 4 years at

---

[17] B15.
[18] B18.
[19] B19.
[20] A21-30.  The Superior Court denied the motion for a hearing because it found cases where motions to withdraw were decided without testimony.  A28.  The court denied the plea withdrawal for substantially the same reasons expressed in its post-evidentiary-hearing decision.  A23-28.
[21] A8-9; Answering Br. at 3.

Level V, and not the 3.5 year maximum Level V sentence stated in the TIS or by the court during the plea colloquy with Martinez.

(10) Martinez appealed the denial of both motions. On appeal, the State agreed with Martinez that the court should have held an evidentiary hearing. This Court remanded to the Superior Court to hold an evidentiary hearing and to decide whether Martinez should be allowed to withdraw his plea.[22] Whitehead was the only witness to testify at the evidentiary hearing. He testified about his conversations with Martinez leading to the plea and during the plea hearing.

(11) After the evidentiary hearing, the Superior Court once again denied Martinez's motion to withdraw his guilty plea.[23] The court agreed that the indictment was defective by not including an underlying traffic offense.[24] But the court found that a defendant waives defects in an indictment when he pleads guilty. The court also held that, even though Count I did not charge a crime, Martinez knowingly and voluntarily consented to the plea because, based on the questions Martinez was asked during the plea colloquy and his answers to those questions, he sufficiently understood the crimes charged and their consequences.

---

[22] A33; *Hernandez-Martinez v. State*, Del. Supr., No. 179, 2022 (Sept. 1, 2022) (ORDER).
[23] *Hernandez-Martinez*, 2023 WL 3221888, at *1.
[24] *Id.* at *3.

(12)   The court found that even though the TIS and the plea colloquy misstated the maximum sentence, Martinez did not suffer prejudice because he was sentenced to less than the maximum sentence stated in the TIS – a statement that was incorrect.  For the loss of the right to possess a firearm, the court ruled that it was enough that one answer on the TIS correctly stated that forfeiture of the right would result.

(13)   The court also concluded that Martinez had not shown grounds for asserting factual innocence.  According to the court, Martinez's defenses to the Count I charge – that Root was walking on the wrong side of the road in dark clothing without a light and under the influence of opioids, which would allow Martinez to assert a choice of evils defense – were "apparently in contravention to what was captured on a dash cam video."  The court used the word "apparently" because it did not actually view the video.[25]

(14)   Finally, the court held that Martinez had voluntarily admitted his conduct to police and could not portray the accident "in a lopsided manner" without testifying at the evidentiary hearing.[26]  And the court ruled that allowing the plea to be withdrawn would prejudice the State and inconvenience the court because Root's

---

[25] *Id.* at *5 n.38 ("The Court has not viewed the video.").
[26] *Id.* at *5.

7

family would experience further emotional turmoil and the court would also expend additional judicial resources to hear his case.

(15) On appeal, Martinez raises the same arguments he raised in the Superior Court – the plea was defective because of multiple mistakes during the plea hearing, he had a basis to assert legal innocence, and his counsel was ineffective. "We review the denial of a request to withdraw a guilty plea for abuse of discretion."[27] "When a motion to withdraw a guilty plea is made prior to sentencing, there is 'a lower threshold of cause sufficient to permit withdrawal'"[28] because it protects the "right of an accused to trial."[29] Under Superior Court Criminal Rule 32(d), a pre-sentence plea may be withdrawn for "any fair and just reason." After sentencing, a plea may be set aside only by motion and under Rule 61.

(16) To assess a "fair and just reason," the court will normally examine a list of non-exclusive factors, any one of which can be conclusive of the result.[30] In *Patterson v. State*, we permitted a defendant to withdraw his plea before sentencing

---

[27] *See Chavous v. State*, 953 A.2d 282, 285 (Del. 2008); *Scarborough v. State*, 938 A.2d 644, 649 (Del. 2007).

[28] *Shorts v. State*, 189 A.3d 184, 2018 WL 2437229, at *2 (Del. May 30, 2018) (TABLE) (quoting *McNeill v. State*, 810 A.2d 350, 2002 WL 31477132, at *1 (Del. Nov. 4, 2002)); *State v. Phillips*, 2007 WL 3105749, at *1 (Del. Super. Ct. Sept. 20, 2007) ("[M]otions to withdraw guilty pleas are typically granted more liberally prior to sentencing than after sentencing.").

[29] *United States v. Stayton*, 408 F.2d 559, 560 (3d Cir. 1969).

[30] *Jones v. State*, 276 A.3d 1053, 2022 WL 1134744, at *2 (Del. Apr. 18, 2022) (TABLE). The factors are "(1) the procedure of the colloquy; (2) whether the plea was intelligent, knowing, and voluntary; (3) whether the defendant had a basis to assert legal innocence; (4) whether the defendant had adequate legal counsel throughout the proceedings; and (5) whether the State would be prejudiced or the court would be unduly inconvenienced if the defendant were permitted to withdraw his guilty plea." *Id*.

based on the cumulative effect of errors during his plea hearing.[31] Patterson showed that the court and his attorney failed to review with him the essential elements of the charged offenses before accepting his plea.[32] He also showed that he was misinformed about the sentencing consequences of his guilty plea.[33]

(17) Like *Patterson*, the cumulative effect of the multiple errors here with the Indictment, Plea Form, and TIS, which carried over to the plea colloquy, is so great that the Superior Court exceeded its discretion when it refused to allow Martinez to withdraw his guilty plea. As noted earlier, the State does not dispute that Martinez pled guilty to Count I and that Count I did not state a crime; the Plea Form and the TIS form misstated the maximum sentence; and the TIS contained contradictory answers about the right to possess firearms after conviction. And, although the State argues that the court sentenced Martinez to less time that stated on the TIS and during the plea colloquy, that is incorrect.

---

[31] *Patterson v. State*, 684 A.2d 1234 (Del. 1996).
[32] *Id.* at 1235, 1237, 1239; *see also Henderson v. Morgan*, 426 U.S. 637, 645-46 (1976) (holding a plea involuntary where neither defense counsel nor the trial court explained to the defendant that an intent to cause the death of his victim was an element of the offense of second-degree murder).
[33] *Patterson*, 684 A.2d at 1238.

(18)    The State's arguments to the contrary are unpersuasive.  First, the State contends that, under *Smith v. State*[34] and *Shorts v. State*,[35] the court cured the maximum sentence defect by sentencing Martinez to a sentence equal to the maximum sentence stated in the TIS and the plea hearing.  In *Smith* and *Shorts*, the maximum sentence error was corrected when the court resentenced the defendant on remand consistent with the erroneous maximum sentence stated by the court (*Smith*) or when the State withdrew its petition to declare the defendant an habitual offender (*Shorts*).[36]

(19)    Here, however, the corrected sentencing order states that Martinez was sentenced to 4 years at Level V, not the 3.5 years stated in the TIS and during the plea colloquy.  Although the court intended to sentence Martinez to 3.5 years or fewer,[37] according to the corrected sentencing order, it sentenced him to 4 years at

---

[34] 89 A.3d 478, 2014 WL 1017277, at *3 (Del. March 13, 2014) (TABLE) ("The original sentencing judge sentenced Smith to the statutory maximum of twenty-five years.  On remand, however, the sentencing judge reduced this sentence to twenty years to comport with the misstatement on Smith's plea form.  The second sentencing hearing thus corrected any alleged error.").

[35] 2018 WL 2437229, at *3.

[36] *Smith*, 2014 WL 1017277, at *3 ("The original sentencing judge sentenced Smith to the statutory maximum of twenty-five years.  On remand, however, the sentencing judge reduced this sentence to twenty years to comport with the misstatement on Smith's plea form. The second sentencing hearing thus corrected any alleged error."); *Shorts*, 2018 WL 2437229, at *3 ("The Superior Court found that while the inaccuracy was a procedural defect, it was cured by the State's withdrawal of its petition to declare Shorts an habitual offender.  The State explained that in the end, the sentencing range was 'two to twenty-seven years, exactly as it [was] set forth' on the plea form. We agree.").

[37] August 2022 Opening Br. Ex. A at 4-5 (Transcript Ruling) ("The cases of *Smith v. State* and *Shorts v. State*, both state that if the defendant is sentenced to something less than what he thinks

10

Level V. Under Rule 11, "the court must confirm that the defendant understands the consequences of his guilty plea and must state the minimum and maximum sentences on the record."[38] The requirement exists because "'[t]he maximum possible sentence is the most important consequence of a guilty plea.'"[39] Here, it is undisputed that Rule 11 was violated when counsel gave the court incorrect information, leading the court to misstate the maximum sentence.

(20) Second, relying on *Smith v. State*, the State contends that Martinez's guilty plea waived any defects in his plea hearing.[40] In a four-paragraph order, this Court in *Smith* upheld a Superior Court order denying post-conviction relief because "a voluntary guilty plea waives a defendant's right to challenge any errors or defects before the plea, even those of constitutional dimension."[41] *Smith* is distinguishable

---

is the maximum, then this corrects the error. And I do not intend to sentence the defendant to more than three-and-a-half years.").

[38] *Shorts*, 2018 WL 2437229, at *2.

[39] *Id*. at *2 (quoting *Allen v. State*, 509 A.2d 87, 88–89 (Del. 1986)).

[40] Answering Br. at 20-21. The State also argued that Martinez's affirmative answers on the forms and during the colloquy leave no doubt that he understood the consequences of his guilty plea. Answering Br. at 21. But Martinez admitted only to conduct that, without charging the underlying traffic offense, was not criminal. The State also cannot cobble together the necessary elements of the crime from other indictment counts unless those counts are specifically incorporated into the operative count. *See* Super. Ct. Crim. R. 7(c)(1) ("Allegations made in one count may be incorporated by reference in another count."); *State v. Stewart*, 1980 WL 324504, at *1 (Del. Super. Ct. Aug. 25, 1980) ("In a case in which there are multiple counts, each one is treated as if it were a separate indictment."), *aff'd*, 437 A.2d 153 (Del. 1981); *State v. Green*, 376 A.2d 424, 429 (Del. Super. Ct. 1977) ("Each count is considered as if it were a separate indictment and must be sufficient without reference to other counts unless they are incorporated by reference."); *State v. Minnick*, 168 A.2d 93, 97 (Del. Super. Ct. 1960) ("Each count in an indictment must normally be considered as an individual unit, as though it were a separate indictment standing by itself.").

[41] 2004 WL 120530, at *1.

11

on several grounds. Smith filed his motion months after sentencing and was subject to Rule 61 and not the more lenient standard under Rule 32. Finality concerns are heightened when a defendant seeks to withdraw a plea after sentencing. Smith also sought to challenge the legality of his arrest, which "has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction."[42] Here, Martinez moved to withdraw his guilty plea prior to sentencing and, after being advised by new counsel of the substantive mistakes during the plea hearing, moved to withdraw his plea in a timely manner. Finally, unlike *Smith*, there were multiple mistakes in Martinez's plea hearing.

(21) Although not cited by the State, in *Downer v. State* our Court held that pleading guilty waived defects in the indictment.[43] *Downer* is also distinguishable. In *Downer*, the defendant moved to withdraw his guilty plea fifteen months after sentencing. Like *Smith*, his motion was subject to Rule 61, not Rule 32. Downer also benefitted from his guilty plea – he avoided conviction for a more serious charge.[44] And finally, *Downer* involved the prosecution of a sexual crime against a child. The delay in filing the motion subjected the State and the victim to "evident" prejudice.[45]

---

[42] *Id*. at *1 (quoting *United States v. Crews,* 445 U.S. 463, 474 (1980)).
[43] 543 A.2d 309, 309-10 (Del. 1988).
[44] *Downer*, 543 A.2d at 312*; see also Jones v. State*, 2021 WL 1259520, at *1-2 (Del. Apr. 5, 2021) (typifying an arrangement obviously beneficial to the defendant).
[45] *Downer*, 543 A.2d at 313.

(22)   Here, by contrast, Martinez moved to withdraw his plea pre-sentencing, pled guilty to the two lead charges in the indictment, and his withdrawn plea does not subject the State to the prejudice inherent in trying a case in which a child victim is an essential witness.[46]  The facts here are more consistent with those in *Patterson*, where the cumulative effect of multiple mistakes during the plea hearing supports a fair and just reason for Martinez to withdraw his guilty plea.[47]

(23)   We also note that the Superior Court did not adequately examine Martinez's basis for legal innocence.  The court did consider the statements by the witnesses in the other car about the incident.[48]  But it is unclear how these statements contradicted Martinez's factual assertions or were inconsistent with the legal defense he hoped to raise.  The Superior Court also characterized Martinez's statements as

---

[46] *See also State v. Woolford*, 2002 WL 1343827, at *1-3 (Del. Super. Ct. June 18, 2002) (permitting the defendant to withdraw his guilty plea presentencing, and distinguishing *Downer* on the ground that defendant did not understand the nature of a charge).

[47] *Patterson*, 684 A.2d at 1237 ("If [the failure by his attorney and the trial judge to explain the elements of the charges] . . . were the only defect in the plea colloquy we would not be inclined to give credit to Patterson's claim of a lack of understanding as to the nature and consequence of his plea. However, the Rule 11 deficiency coupled with the ill-formed understanding of the sentencing consequences requires an examination of the cumulative effect of the claimed errors.").  Our *Downer* decision might be out of step with federal and many state courts. *See* Thea Johnson, *Lying at Plea Bargaining*, GA. ST. U. L. REV. 673,689-690 (2022) ("[T]here is an understanding that a plea, unlike a civil settlement, represents a truthful and accurate record.  This is what Federal Rule of Criminal Procedure 11 calls for, as do most states' local rules."); Thea Johnson, *Fictional Pleas*, IND. L.J. 855, 892 (2019) ("[T]he fact that the federal system and most states require some factual basis for a plea bargain indicates a normative commitment to recording some version of truth."); Darryl K. Brown, *Can Prosecutors Temper the Criminal Code by Bringing Factually Baseless Charges and by Charging Nonexistent Crimes?*, MARQ. LAWYER 33, 34 (2020) ("[I]t seems that most U.S. jurisdictions do not endorse factually or statutorily baseless convictions.  Both practices are barred in federal courts.  Appellate courts in some states consistently reverse plea-based as well as trial-based convictions for nonexistent offenses.").

[48] Answering Br. at 8-9; *Hernandez-Martinez*, 2023 WL 3221888, at *1.

13

"apparently in contravention" of the dash cam video, but the court did not view the video.

(24) The State's prejudice arguments do not overcome the stark substantive errors during the plea hearing. The State argues it would suffer prejudice, and the court would be inconvenienced, if the defendant is allowed to withdraw his guilty plea. The State also maintains that Root's family would suffer further emotional turmoil if the case proceeds to trial.[49] But the State has made only a general appeal to prejudice, without stating what specific prejudice would occur. We also acknowledge and sympathize with the upset that further proceedings will cause the Root family. But multiple substantial errors occurred during the plea hearing. "The cumulative effect of these errors precluded a determination that the plea was knowingly and voluntarily entered."[50]

(25) Finally, Martinez has asked that, on remand, the case be assigned to a different judge. According to Martinez, the trial judge interfered with his counsel's examination and, during the evidentiary hearing, asked Martinez's former attorney questions that elicited answers favorable to the State. On remand, a case will not be reassigned to a different judge unless, when viewed objectively, we find an appearance of bias sufficient to doubt the trial judge's impartiality.[51] Martinez has

---

[49] Answering Br. at 33-34.
[50] *Patterson*, 684 A.2d at 1235.
[51] *Wright v. Moore*, 953 A.2d 223, 227 (Del. 2008).

14

not made such a showing, and we are confident that the trial judge will proceed impartially with the case on remand.

NOW, THEREFORE, IT IS ORDERED the judgment of the Superior Court is REVERSED, and the case is remanded for further proceedings consistent with this order. Jurisdiction is not retained.

BY THE COURT:

/s/ Collins J. Seitz, Jr.
Chief Justice
